Froessel, J.
The question we are called upon to decide is
whether an injunction permanently restraining peaceful recognitional picketing by two minority unions, where the employer had recognized and contracted with a different and independent union representing a majority of his employees, may stand. It is clear that the employer’s business activities affect interstate commerce for the purpose of the jurisdiction of the National Labor Relations Act (U. S. Code, tit. 29, § 151 et seq., herein called the Act), and the lower courts necessarily assumed so in their decisions. The employer was awarded injunctive relief on the authority of our decision in Pleasant Val. Packing Co. v. Talarico (5 N Y 2d 40).
The facts in the Pleasant Valley case were substantially similar to the facts found here, except that the independent union in that case had been certified by the National Labor Relations Board (herein called the Board) as the exclusive bargaining agent of the employees. It should be noted, however, that *95 the right of employees to bargain collectively through an exclusive bargaining representative is not conditioned upon an antecedent certification by the Board where the majority status of the union is clearly established; an employer who denies recognition to a noncertified majority union commits an unfair labor practice (Mine Workers v. Arkansas Flooring Co., 351 U. S. 62; Labor Bd. v. Mine Workers, 355 U. S. 453, 462-463; Brooks v. Labor Bd., 348 U. S. 96, 100-101; National Labor Relations Bd. v. Kobritz, 193 F. 2d 8, 14).
We held, in Pleasant Valley, that recognitional picketing by a stranger union designed to coerce an employer to commit an unlawful act—i.e., to bargain with the picketing union despite the fact that another union had been" certified as the exclusive bargaining agent of the employees—was neither protected nor prohibited activity under the Act, and hence the State courts were free to assume jurisdiction. Subsequent to the Pleasant Valley decision, however, the Supreme Court of the United States decided San Diego Unions v. Garmon (359 U. S. 236) which, in the words of Justice Hablan’s concurring opinion, ‘ ‘ will stand as a landmark in future ‘ pre-emption ’ cases in the labor field ” (p. 250).
The Garmon case involved peaceful picketing designed to coerce the employer into signing a union shop agreement, and, in reversing a judgment of the California Supreme Court awarding the employer tort damages for injuries caused by the Unions’ activities, the Supreme Court held (at pp. 245-246): “ When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. * * * Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State’s jurisdiction is displaced.”
The Garmon decision was held to be controlling in Columbia Broadcasting System v. McDonough (6 N Y 2d 962), where a union—engaged in a strike against two companies which supplied CBS with lantern slides and photographic prints •—commenced secondary picketing of CBS with the avowed purpose *96 of compelling CBS to cease doing business with the struck suppliers. Special Term temporarily enjoined the secondary picketing on the authority of the Pleasant Valley decision, but the Appellate Division reversed (8 A D 2d 695) and held: “ Where, as here, there is an arguable question of jurisdiction, determination in the first instance must be left to the National Labor Relations Board and the State courts are not primary tribunals to adjudicate such issue. (San Diego Unions v. Garmon, 359 U. S. 236.) ” Since it was arguable whether the secondary picketing constituted an unfair labor practice under section 8 (subd. [b], par. [4], cl. [A]) of the Act (U. S. Code, tit. 29, § 158, subd. [b], par. [4], cl. [A]), we unanimously affirmed the Appellate Division (6 N Y 2d 962).
It is apparent that as a result of the Garmon decision (supra), unanimously followed in Columbia Broadcasting, the Pleasant Valley case (supra) is no longer controlling. It was certainly arguable in Pleasant Valley, where we were divided 4 to 3, whether reoognitional picketing by a stranger union, in the face of an existing Board certification of a different union, violated section 8 (subd. [b], par. [4], cl. [C]) of the Act (U. S. Code, tit. 29, § 158, subd. [b], par. [4], cl. [C]). In that case, we took the position that “ any doubt ” in a particular case “ should be resolved in favor of [State] jurisdiction ” (5 N Y 2d, at p. 47). However, the basic approach to a labor pre-emption problem announced in the Garmon case is diametrically opposed to this view. In Garmon, the Supreme Court adopted the rule that any doubt must be resolved in favor of ‘ ‘ the exclusive primary competence of the Board”, the “governing consideration” being “that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy ” (359 U. S., at pp. 245-246).
The Garmon decision had not yet been rendered at the time the lower courts decided this case, and hence they understandably asserted jurisdiction under the Pleasant Valley decision. Meanwhile, the circuit courts disagreed as to whether peaceful picketing for recognition violated section 8 (subd. [b], par. [1], cl. [A]) of the Act (U. S. Code, tit. 29, § 158, subd. [b], par. [1], cl. [A]), which makes it an unfair labor practice for a union to restrain or coerce employees in the exercise of the rights guar *97 anteed them by section 7 (cf. National Labor Relations Bd. v. United Rubber, Cork, Linoleum & Plastic Workers, 269 F. 2d 694 [4th Cir.], with Drivers, Chauffeurs & Helpers Local v. National Labor Relations Bd. [Curtis Bros.], 274 F. 2d 551 [D. C. Cir.], cert, granted 359 U. S. 965, and National Labor Relations Bd. v. International Brotherhood of Teamsters, 272 F. 2d 85 [2d Cir.]).
While the appeal to this court was pending, the Supreme Court, in the Curtis Bros, case (Labor Bd. v. Drivers Local Union [Curtis Bros.], 362 U. S. 274), held (p. 290) “ that Congress in the Taft-Hartley Act authorized the Board to regulate peaceful ' recognitional ’ picketing only when it is employed to accomplish objectives specified in § 8 (b) (4); and that § 8 (b) (1) (A) is a grant of power to the Board limited to authority to proceed against union tactics involving violence, intimidation, and reprisal or threats thereof—conduct involving more than the general pressures upon persons employed by the affected employers implicit in economic strikes.” Thus, in the words of the Garmon decision (supra, at p. 246), the Supreme Court has supplied us with a “compelling precedent” that the union activity here enjoined — under the law in effect at the time of issuance of the injunction by Special Term—was not an unfair labor practice, and hence the State courts were not pre-empted of jurisdiction on that count.
Whether it follows that peaceful recognitional picketing is protected activity within the compass of section 7 of the Act (U. S. Code, tit. 29, § 157)—the other side of the pre-emption coin—is not altogether clear from the Curtis Bros, decision (Labor Bd. v. Drivers Local Union, supra). In discussing the limitations or qualifications on the right to strike and picket referred to in section 13 of the Act (U. S. Code, tit. 29, § 163), the court made reference to the doctrine fashioned by the Board and the court “that the Board should deny reinstatement to strikers [or pickets] who engaged in strikes [or picketing] which were conducted in an unlawful manner or for an unlawful objective ” (362 U. S. 274, 281; emphasis supplied).
The statement that employees who engaged in picketing ‘ for an unlawful objective ” would not be entitled to reinstatement implies that such picketing is not protected activity within section 7. It is clear in the present case that the objective of the picketing, as found by the lower courts, was to induce the *98 employer to commit an unfair labor practice by breaching a contract he had made with a majority independent union. In the “ sensitive area of peaceful picketing ”, however (362 U. S. 274, supra, at p. 284), it is susceptible of reasonable argument that picketing which is not proscribed by section 8 may be protected by section 7 for purposes of pre-empting the State’s injunctive processes (see Weber v. Anheuser-Busch, 348 U. S. 468, 474-475), and hence, under the Garmon doctrine, it is the Board, not the State courts, which has exclusive primary jurisdiction to resolve the issue.
In any event, a compelling reason for reversing the judgment below is that the Landrum-Griffin Amendments to the National Labor Relations Act (Labor-Management Reporting and Disclosure Act of 1959, 73 U. S. Stat. 519 et seq.), which went into effect on November 13, 1959, have effectively rendered moot the issue of State jurisdiction here involved. Paragraph (7) of subdivision (b) of section 8 of the Act, added by the new law (§ 704, subd. [c]), expressly makes recognitional picketing an unfair labor practice where the employer has lawfully recognized another labor organization, and a question concerning representation may no.t appropriately be raised under section 9 (Act, § 8, subd. [b], par. [7],'cl. [A]). “This new statutory provision seems squarely to cover the type of conduct involved here” (Memorandum of Mr. Justice Stewart in the Curtis Bros, case, 362 U. S., supra, at p. 292; see, also, 44 Minn. L. Rev. 257, 264), and in any event it is the province of the Board, not the State courts, to decide the issue in the first instance. Since it is now arguably within the compass of the Board’s jurisdiction to enjoin the picketing here involved, the permanent injunction granted below obviously cannot stand.
The judgment should be reversed, without costs to either party, and the complaint dismissed.