SMITH *v.* EVENING NEWS ASSOCIATION.

1. LABOR RELATIONS—INTERSTATE COMMERCE—NATIONAL LABOR RELATIONS BOARD.

Congress has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclusive jurisdiction in the national labor relations board to determine such labor disputes, where labor practices are either prohibited or protected by the labor management relations act (29 USC [1958 ed], §§ 158, 160).

2. SAME—FAILURE OF NATIONAL LABOR RELATIONS BOARD TO ACT— STATES.

The failure of the national labor relations board to assume jurisdiction over a labor dispute does not leave the States free to regulate activities they would otherwise be precluded from regulating (29 USC [1958 ed], §§ 158, 160).

3. SAME—INTERSTATE COMMERCE—JURISDICTION OF STATE COURT.

State courts do not have jurisdiction to grant relief in an action at law for damages for breach of a labor union contract by employer engaged in interstate commerce, where the breach

---

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 31 Am Jur, Labor § 360.
Effect of national labor relations act to exclude State action. 174 ALR 1051.

also debatably presents matter for relief under the national labor relations act (29 USC [1958 ed], §§ 158, 160).

4. SAME—INTERSTATE COMMERCE—BREACH OF CONTRACT—DIS-
CRIMINATION AGAINST UNION EMPLOYEES.

The breach of a labor union contract by an employer engaged in interstate commerce did not present a cause of action determinable in State courts, where the breach complained of arose from loss of wages by members of a nonstriking union who were allegedly discriminated against by the employer in that it employed nonunion employees during period of strike by another union (29 USC [1958 ed], §§ 158, 160).

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 7, 1960. (Docket No. 39, Calendar No. 48,675.) Decided January 9, 1961. Application for certiorari filed in the Supreme Court of the United States May 12, 1961.

Action by Doyle Smith, individually and as assignee of 49 other employees, against the Evening News Association, a Michigan corporation, for wages claimed due on breach of union contract by discriminatory partial employment while members of another union were on strike. Cause dismissed on motion. Plaintiff appeals. Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell* (*William Mazey,* of counsel), for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy* (*Clifford W. Van Blarcom,* of counsel), for defendant.

KAVANAGH, J. Plaintiff and his assignors are employees of defendant Evening News Association and are members of a labor organization, the Newspaper Guild of Detroit. The Guild had a collective bargaining agreement with defendant which provided, among other things:

"There shall be no discrimination against any employee because of his membership or activity in the Guild."

A group of employees of defendant belonging to a union other than the Guild went on strike. Defendant permitted employees of the editorial department, business office and advertising department, who were not covered by a collective bargaining agreement, to report on the premises and they were paid full wages even though there was no work available.

Plaintiff and his assignors were willing to work but defendant permitted only a few to work and, as a result, plaintiff and his assignors lost considerable money in wages.

Plaintiff contends that defendant's refusal to pay full wages to plaintiff and his assignors and defendant's payment of full wages to other employees constituted discrimination against an employee because of his membership or activity in the Guild and, therefore, was a violation of the contract provision above quoted.

Plaintiff brought this action in the circuit court for the county of Wayne to recover damages for such breach.

Defendant moved to dismiss for lack of jurisdiction on the following grounds:

"1. Defendant is charged with acts which, if true, constitute an unfair labor practice as defined in the national labor relations act, as amended, and

"2. The national labor relations board has been vested by virtue of such amended act with exclusive jurisdiction of the subject matter."

The trial judge granted the motion to dismiss for lack of jurisdiction on the theory that Congress in adopting the national labor relations act had preempted the field and placed the question of a statutory unfair labor practice exclusively within the control and jurisdiction of the national labor relations board.

Plaintiff appeals, and we are presented with the following question:

Does a State court have jurisdiction of an action at law by an employee against his employer for breach of a contract between such employer and a labor organization to which such employee belongs where the action is based upon facts which if true would constitute both a breach of such contract and an unfair labor practice under the provisions of section 8(a) of the national labor relations act as amended?[*]

For the purpose of the decision on this particular motion to dismiss it was stipulated that defendant was engaged in commerce within the meaning of the national labor relations act as amended. It should be further noted that plaintiff failed to bring a complaint to the board under the unfair labor practices provisions of the national labor relations act until after the expiration of the statutory period provided for the bringing of such complaint.

Plaintiff argues that under the decisions of the United States supreme court Congress has not preempted the entire labor field. He contends there are numerous exceptions to the rule. He argues that the case of *Garner* v. *Teamsters Union,* 346 US 485 (74 S Ct 161, 98 L ed 228), stands only for the proposition that peaceful picketing of the premises of an employer engaged in commerce may not be enjoined by a State court. He points out as an exception to the general rule that in the case of *United Construction Workers* v. *Laburnum Construction Corp.,* 347 US 656 (74 S Ct 833, 98 L ed 1025), where plaintiff sought damages in a State court from a union for engaging in coercive conduct, which conduct was also an unfair labor practice, the United States supreme court affirmed the right of plaintiff to damages against the union on the theory

---

[*] 29 USC (1958 ed), § 158(a).—REPORTER.

that Congress, in the national labor relations act, had not provided nor suggested any substitute for the traditional State court procedure for collecting damages for injuries caused by tortious conduct. Plaintiff refers to the case of *United Automobile Workers* v. *Russell,* 356 US 634 (78 S Ct 932, 2 L ed 2d 1030), where the United States supreme court did not deprive the Alabama State court of jurisdiction where it had allowed an employee to recover damages from a union even where the union's conduct constituted an unfair labor practice and the national labor relations board had jurisdiction to award back pay to the employee. Plaintiff calls particular attention to the fact that in the *Russell Case* the court indicated there are cases in which there is a possibility that both the board and the State court have jurisdiction to award lost pay.

Plaintiff contends this is simply an action for damages for breach of contract. He claims State courts have traditional and statutory jurisdiction to grant such relief.

Defendant, on the other hand, relying upon almost the same cases, contends that they hold that preemption exists limiting the jurisdiction of State courts in an action for damages for breach of contract when such action also constitutes an unfair labor practice.

Section 8(a) of the national labor relations act provides in part as follows:

"It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 61 Stat 140 (29 USC [1958 ed], § 158).

Section 10(c) of the act provides in part as follows:

"If upon the preponderance of the testimony taken the board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act."  61 Stat 147 (29 USC [1958 ed], § 160).

Whether plaintiff can maintain his action in the State court is entirely dependent upon whether Congress pre-empted the field as to this kind of action and vested exclusive jurisdiction in the national labor relations board.  This is, to say the least, a difficult question.

The United States supreme court itself has found difficulty in reconciling the effect and meaning of its decisions on this field of law.  It seems we must start with the general premise that Congress has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclusive jurisdiction in the national labor relations board to determine such labor disputes where labor practices are either prohibited or protected by the labor management relations act.

In determining whether this is always true we turn to the latest available position on this subject— the discussion in *San Diego Building Trades Council* v. *Garmon,* 359 US 236 (79 S Ct 773, 3 L ed 2d 775). There, the respondents, copartners in the business of selling lumber in California, began an action in the superior court for the county of San Diego asking for an injunction and damages.  The unions sought from respondents an agreement to retain in their employ only those workers who were already mem-

bers of the union or who applied for membership within 30 days. Respondents refused until one of the unions had been designated as the collective bargaining agent. The unions began at once peacefully picketing respondents' place of business and exerting pressure on customers and suppliers in order to persuade them to stop dealing with respondents. The trial court found that the sole purpose of these pressures was to compel execution of the proposed contract. The unions protested this finding, claiming the purpose of their activities was to educate the workers and persuade them to become members. On the basis of its findings, the court enjoined the unions from picketing and from the use of other pressures to force an agreement. The court also awarded $1,000 damages for losses found to have been sustained. The United States supreme court granted certiorari and decided the matter along with *Guss* v. *Utah Labor Relations Board,* 353 US 1 (77 S Ct 598, 609, 1 L ed 2d 601), and *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.,* 353 US 20 (77 S Ct 604, 1 L ed 2d 613, 608),* holding that the refusal of the national labor relations board to assert jurisdiction did not leave with the States power over activities they otherwise would be pre-empted from regulating. In vacating and remanding the judgment of the California court (*San Diego Building Trades Council* v. *Garmon,* 353 US 26, 12 [77 S Ct 607, 609, 1 L ed 2d 618, 608]) the United States supreme court pointed out that the *Guss* and *Fairlawn Cases* involved relief of an equitable nature and controlled the injunctive question, but remanded to the State court the question of whether the judgment for damages would be sustained under California law. On remand, the State court sustained the award of

---

* Page references are to separate opinion filed in these cases and in the first *San Diego Building Trades Council Case, post.*—Reporter.

·damages.* The California court held that those ac-
tivities constituted a tort based on an unfair labor
practice under State law. In so holding, the court re-
lied on general tort provisions of the California
civil code as well as State enactments dealing specif-
ically with labor relations. The United States su-
preme court again granted certiorari. Justice Frank-
furter delivered the opinion of the court. After
pointing out the difficult situation presented to that
court in construing the national labor relations act,
he said (p 240):

"This court was called upon to apply a new and
complicated legislative scheme, the aims and social
policy of which were drawn with broad strokes while
the details had to be filled in, to no small extent, by
the judicial process."

He then discussed all the earlier cases on this sub-
ject and concluded by saying (pp 244-246):

"When it is clear or may fairly be assumed that
the activities which a State purports to regulate are
protected by section 7 of the national labor relations
act, or constitute an unfair labor practice under sec-
tion 8, due regard for the Federal enactment requires
that State jurisdiction must yield. To leave the
States free to regulate conduct so plainly within the
central aim of Federal regulation involves too great
a danger of conflict between power asserted by Con-
gress and requirements imposed by State law. Nor
has it mattered whether the States have acted
through laws of broad general application rather
than laws specifically directed towards the gover-
nance of industrial relations.³ Regardless of the

* *Garmon* v. *San Diego Building Trades Council*, 49 Cal 2d 595
(320 P2d 473).—REPORTER.
"3 See *Weber* v. *Anheuser-Busch, Inc.*, 348 US 468 (75 S Ct 480,
99 L ed 546), in which it was pointed out that the State court had
relied on a general restraint of trade statute. *Cf. Automobile
Workers* v. *Wisconsin Board*, 351 US 266 (76 S Ct 794, 100 L ed
.1162). The case before us involves both tort law of general applica-
tion and specialized labor relations statutes."

mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

"At times it has not been clear whether the particular activity regulated by the States was governed by section 7 or section 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the act that these determinations be left in the first instance to the national labor relations board. What is outside the scope of this court's authority cannot remain within a State's power and State jurisdiction too must yield to the exclusive primary competence of the board. See, *e. g., Garner* v. *Teamsters Union,* 346 US 485, especially at 489–491 (74 S Ct 161, 98 L ed 228) ; *Weber* v. *Anheuser-Busch, Inc.,* 348 US 468 (75 S Ct 480, 99 L ed 546).

"The case before us is such a case. The adjudication in California has throughout been based on the assumption that the behavior of the petitioning unions constituted an unfair labor practice. This conclusion was derived by the California courts from the facts as well as from their view of the act. It is not for us to decide whether the national labor relations board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to section 7 or section 8 of the act, the States as well as the Federal courts must defer to the exclusive competence of the national labor relations board if the danger of State interference with national policy is to be averted.

"To require the States to yield to the primary jurisdiction of the national board does not ensure board adjudication of the status of a disputed activity. If the board decides, subject to appropriate Federal judicial review, that conduct is protected by section 7, or prohibited by section 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated

by the States.[4] However, the board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the general counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in *Guss* v. *Utah Labor Relations Board,* 353 US 1 (77 S Ct 598, 609, 1 L ed 2d 601). In that case we held that the failure of the national labor relations board to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating. It follows that the failure of the Board to define the legal significance under the act of a particular activity does not give the States the power to act. In the absence of the board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this court to decide whether such activities are subject to State jurisdiction. The withdrawal of this narrow area from possible State activity follows from our decisions in *Weber* and *Guss.* The governing consideration is that to allow the States to control activities that are potentially subject to Federal regulation involves too great a danger of conflict with national labor policy.[5]

"In the light of these principles the case before us is clear. Since the national labor relations board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of section 7 or section 8 of the act, the State's jurisdiction is displaced."

---

"[4] See *Automobile Workers* v. *Wisconsin Board,* 336 US 245 (69 S Ct 516, 93 L ed 651). The approach taken in that case, in which the court undertook for itself to determine the status of the disputed activity, has not been followed in later decisions, and is no longer of general application.

"[5] 'When Congress has taken the particular subject-matter in hand coincidence is as ineffective as opposition.' *Charleston & West. Carolina R. Co.* v. *Varnville Furniture Co.,* 237 US 597, 604 (35 S Ct 715, 59 L ed 1137, Ann Cas 1916D, 333)."

Justice Frankfurter went on to say (pp 247, 248):

"It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. *United Automobile Workers* v. *Russell,* 356 US 634 (78 S Ct 932, 2 L ed 2d 1030); *United Construction Workers* v. *Laburnum Construction Corp.,* 347 US 656 (74 S Ct 833, 98 L ed 1025). We have also allowed the States to enjoin such conduct. *Youngdahl* v. *Rainfair, Inc.,* 355 US 131 (78 S Ct 206, 2 L ed 2d 151); *Automobile Workers* v. *Wisconsin Board,* 351 US 266 (76 S Ct 794, 100 L ed 1162). State jurisdiction has prevailed in these situations because the compelling State interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in *United Construction Workers* v. *Laburnum Construction Corp.,* *supra,* found support in the fact that the State remedy had no Federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, *i.e.,* 'intimidation and threats of violence.' "

Justice Harlan, writing a concurring opinion in the same case, in discussing the majority opinion said (pp 250, 254):

"The threshold question in every labor pre-emption case is whether the conduct with respect to which a State has sought to act is, or may fairly be regarded as, federally protected activity. Because conflict is the touchstone of pre-emption, such activity is obviously beyond the reach of all State power. *Hill* v. *Florida,* 325 US 538 (65 S Ct 1373, 89 L ed 1782); *Automobile Workers* v. *O'Brien,* 339 US 454 (70 S Ct 781, 94 L ed 978); *Motor Coach Employees* v. *Wisconsin Board,* 340 US 383 (71 S Ct 359, 95 L ed 364, 22 ALR2d 874). That threshold question was squarely faced in the *Russell Case,* where the court,

at page 640, said:  'At the outset, we note that the union's activity in this case clearly was not protected by Federal law.'  The same question was, in my view, necessarily faced in *Laburnum.*

"In both cases it was possible to decide that question without prior reference to the national labor relations board because the union conduct involved was violent, and as such was of course not protected by the Federal act.   Thus in *Laburnum,* the preemption issue was limited to the 'type of conduct' before the court.  347 US at 658.   Similarly in *Russell,* which was decided on *Laburnum* principles, the court stated that the union's activity 'clearly was not protected,' and immediately went on to say (citing prior 'violence cases'[1]) that 'the strike was conducted in such a manner that it could have been enjoined' by the State.   356 US at 640.   In both instances the court, in reliance on former 'violence' cases involving injunctions,[2] might have gone on to hold, as the court now in effect says it did, that the State police power was not displaced by the Federal act, and thus disposed of the cases on the ground that State damage awards, like State injunctions, based on violent conduct did not conflict with the Federal statute.   The court did not do this, however.

"Instead the relevance of violence was manifestly deemed confined to rendering the *Laburnum* and *Russell* activities federally unprotected.   So rendered, they could then only have been classified as prohibited or 'neither protected nor prohibited.'   If the latter, State jurisdiction was beyond challenge. *Automobile Workers* v. *Wisconsin Board,* 336 US 245 (69 S Ct 516, 93 L ed 651).   Conversely, if the activities could have been considered prohibited, primary decision by the board would have been necessary, if State damage awards were inconsistent with Federal prohibitions.   *Garner* v. *Teamsters Union,* 346 US 485 (74 S Ct 161, 98 L ed 228).   To deter-

"[1] *Youngdahl* v. *Rainfair, Inc.,* 355 US 131 (78 S Ct 206, 2 L ed 2d 151); *Automobile Workers* v. *Wisconsin Board,* 351 US 266 (76 S Ct 794, 100 L ed 1162).

"[2] See *Allen-Bradley Local* v. *Wisconsin Board,* 315 US 740 (62 S Ct 820, 86 L ed 1154)."

mine the need for initial reference to the board, the court assumed that the activities were unfair labor practices prohibited by the Federal act. *Laburnum, supra,* at 660–663; *Russell, supra,* at 641. It then considered the possibility of conflict and held that the State damage remedies were not pre-empted because the Federal act afforded no remedy at all for the past conduct involved in *Laburnum,* and less than full redress for that involved in *Russell.* The essence of the court's holding, which made resort to primary jurisdiction unnecessary, is contained in the following passage from the opinion in *Laburnum, supra,* at 665 (also quoted in *Russell, supra,* at 644):

" 'To the extent that Congress prescribed preventive procedure against unfair labor practices, that case [*Garner* v. *Teamsters Union, supra*] recognized that the act excluded conflicting State procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the *Garner Case* to demonstrate the existing conflict between State and Federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the State procedure would have survived.'

"Until today this holding of *Laburnum* has been recognized by subsequent cases. See *Weber* v. *Anheuser-Busch, Inc.,* 348 US 468, 477 (75 S Ct 480, 99 L ed 546); *Automobile Workers* v. *Russell, supra,* at 640, 641, 644; *International Assn. of Machinists* v. *Gonzales,* 356 US 617, 621 (78 S Ct 923, 2 L ed 2d 1018), similarly characterizing *Russell;* see, also, the dissenting opinion in *Gonzales,* especially at 624–626.[4]

---

[4] The same view is taken of *Laburnum* and *Russell* in the *amici* briefs filed in the present case by the government and the American Federation of Labor and Congress of Industrial Organizations, the latter stating that '[w]e hope to argue in an appropriate case that the *Russell* decision should be overruled.' "

"The court's opinion in this case cuts deeply into the ability of States to furnish an effective remedy under their own laws for the redress of past non-violent tortious conduct which is not federally protected, but which may be deemed to be, or is, federally prohibited.  Henceforth the States must withhold access to their courts until the national labor relations board has determined that such unprotected conduct is not an unfair labor practice, a course which, because of unavoidable board delays, may render State redress ineffective.  And in instances in which the board declines to exercise its jurisdiction, the States are entirely deprived of power to afford any relief.  Moreover, since the reparation powers of the board, as we observed in *Russell,* are narrowly circumscribed, those injured by nonviolent conduct will often go remediless even when the board does accept jurisdiction.

"I am, further, at loss to understand, and can find no basis on principle or in past decisions for, the court's intimation that the States may even be powerless to act when the underlying activities are clearly 'neither protected nor prohibited' by the Federal act.  Surely that suggestion is foreclosed by *Automobile Workers* v. *Wisconsin Board,* 336 US 245,[5] as well as by the approach taken to Federal preemption in such cases as *Allen-Bradley Local* v. *Wisconsin Board, supra, Bethlehem Steel Co.* v. *New York Board,* 330 US 767, 773 (67 S Ct 1026, 91 L ed 1234), and *Algoma Plywood Co.* v. *Wisconsin Board,* 336 US 301 (69 S Ct 584, 93 L ed 691), not to mention *Laburnum* and *Russell* and the primary jurisdiction

"[5] The court may be correct in stating that 'the approach taken in that case, in which the court undertook for itself to determine the status of the disputed activity, has not been followed in later decisions, and is no longer of general application.'  That, however, has nothing to do with the vitality of the holding that there is no pre-emption when the conduct charged is in fact neither protected nor prohibited.  To the contrary, that holding has remained fully intact, and, as already noted, underlay the decisions in *Laburnum* and *Russell.*"

doctrine itself.[6]  Should what the court now inti-
mates ever come to pass, then indeed State power to
redress wrongful acts in the labor field will be re-
duced to the vanishing point.

"In determining pre-emption in any given labor
case, I would adhere to the *Laburnum* and *Russell*
distinction between damages and injunctions and to
the principle that State power is not precluded where
the challenged conduct is neither protected nor pro-
hibited under the Federal act.  Solely because it is
fairly debatable whether the conduct here involved
is federally protected, I concur in the result of to-
day's decision."

There can be no question from the concurring opin-
ion of Justice Harlan that he believed the majority
opinion had limited the State power to redress
wrongful acts in the labor field to the vanishing point,
whether the acts were federally prohibited or feder-
ally protected.  It is equally evident that Justice
Harlan and those who concurred in his opinion be-
lieved that, where it is fairly debatable whether the
conduct involved is federally protected, Congress has
pre-empted the field so as to prevent State action.

The question in the ·instant case, then, is whether
the alleged discrimination on the part of defendant-
appellee would constitute an unfair labor practice
under the national labor relations act, particularly
under sections 7 or 8 thereof.  It is agreed for the
purpose of this case that the action alleged as con-
stituting a breach of contract would also constitute
an unfair labor practice.  Plaintiff may not charac-
terize an act which constitutes an unfair labor prac-

"[6] If the 'neither protected nor prohibited' category were one of
pre-emption, there would be no point in referring any injunction case
initially to the board since the pre-emption issue would be plain
however the challenged activities might be classified federally.   The
same is true of damage cases under the court's premise of conflict.
State power would thus be confined to activities which were violent or
of merely peripheral Federal concern, see *International Assn. of
Machinists* v. *Gonzales, supra.*"

tice as a contract violation and thereby circumvent the plain mandate of Congress—that jurisdiction of such matters be vested in the national labor relations board and that Federal and State trial courts are without jurisdiction to redress by injunction or otherwise unfair labor practices. If the rule were otherwise, then Federal and State courts could assume jurisdiction over all types of unfair labor practices under the guise of enforcing the terms of the collective bargaining agreement, provided the agreement contains terms governing such matters, and thereby circumvent the plain mandate of Congress.

In the instant case the damages would appear to be the loss of wages. The national labor relations board under section 10(c) of the act has adequate authority to adjust the wrong by requiring the payment of back wages.

Since it is, to say the least, fairly debatable whether the conduct here involved is federally protected, then under both the majority and concurring opinions of *Garmon,* the judgment of the trial court must be affirmed. Defendant shall have costs.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Souris, JJ., concurred.