LOCAL UNION NUMBER 502 OF THE HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION, ROBERT WASHINGTON, HIRAM WILKINS, JAMES McLAURIN AND OLIVER THOMAS, PLAINTIFFS, v. PARK ARLINGTON CORP., A CORPORATION OF NEW JERSEY, JACKSON & JACKSON, INC., A CORPORATION OF NEW JERSEY, MAX KESSEL, STANLEY W. JACKSON AND GERALD SASSONE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 3, 1962.

428

*Mr. Ralph A. Yacavino* for plaintiffs (*Mr. Frank A. Palmieri,* attorney).

*Mr. Vincent J. Apruzzese* for defendants Park Arlington Corp., Jackson & Jackson, Inc., Max Kessel, and Stanley W. Jackson.

*Mr. Robert J. C. McCoid* for defendant Gerald Sassone (*Mr. Joseph P. Dunn,* attorney).

MINTZ, J. S. C.   Plaintiff union and the individual plaintiffs, members of said union, filed a complaint in which it is alleged that the union was the collective bargaining agent for all its members; that on March 22, 1961 defendant Park Arlington Corp. (hereinafter referred to as Park Arlington) entered into a collective bargaining agree-

ment with said union; and that defendant Jackson & Jackson, Inc. (hereinafter referred to as Jackson, Inc.) likewise entered into a similar collective bargaining agreement on April 6, 1961. Each of said agreements contained the following pertinent provisions:

"Article III Section 3.6:

This agreement shall apply to the work jurisdiction of the Union and include the work performed by the following types of employees and the following work.

(g) Tending to carpenters, carrying all rough lumber to the nearest point of installation or erection on all jobs or operations. ('Tending to carpenters' includes the unloading, handling and carrying of lumber and all carpenter materials including prefabricated sections of houses to some central points for erection on each floor, and includes the unloading and handling of rough lumber to the nearest point of erection.)"

"Article IX Section 4. The employer agrees, during the term of this Agreement, that he will not sell, sublet or assign any contract or agreement for the work covered by this Agreement or any part thereof except to a contractor who agrees to comply with all the terms and conditions of this Agreement."

The complaint further alleges that on or about March 22, 1961 Park Arlington commenced the construction of an apartment house building in East Orange, N. J., and that on or about April 4, 1961 it subcontracted part of the work to defendant Jackson, Inc. In the early part of April 1961 defendant Jackson, Inc. hired the individual plaintiffs through the Local 502 hiring hall pursuant to said agreement. They were assigned to work on the East Orange project and continued working until May 4, 1961, at which time the windows were ready to be installed in the first-floor apartments. At this stage in the construction Park Arlington subcontracted the carpentry work to an unknown carpenter.

Additionally, it is asserted that defendant Sassone, business agent for the Essex County and Vicinity District Council of Carpenters and Millwrights of the United Brotherhood of Carpenters and Joiners of America, A. F. of L. - C. I. O., ordered and authorized the carpenters to

carry their own materials and do all work coming under the classification "tending to carpenters," and forbade the carpenter subcontractor from hiring any laborers to do said work under penalty of suggested "trouble" on the carpenter subcontractor's other jobs within the area. On May 4, 1961 and thereafter, pursuant to Sassone's orders, the carpenter's employees carried their own materials and did all the work coming under the classification of "tending to carpenters." Park Arlington, through its president Max Kessel, refused to stop the continued breach of contracts and justified the refusal on the ground that Gerald Sassone and Louis Vehling, president of the Building and Construction Trades Council of Essex County, had forbidden him to employ or permit laborers to carry any lumber and that he could not afford any trouble with Sassone and Vehling.

The complaint further avers that plaintiffs were "paid off" on May 5, 1961 and that they were refused further employment. Nevertheless, the individual plaintiffs continued to report to work every day from May 7 to May 11, but were not permitted on the job. On May 10, 1961 defendant Max Kessel, president of Park Arlington, and Stanley Jackson, president of Jackson, Inc., held an informal meeting with a representative of plaintiff Local 502 at the construction site. As a result of this meeting they promised the representative that they would permit the laborers to return to work on May 15, 1961 and that there would be no further violations of the collective bargaining agreement. Pursuant to the promises that were made, plaintiffs were permitted to return to work on May 15 but were again refused work on May 16 at the direction of Stanley Jackson, who was allegedly operating under orders from Kessel, Sassone and Vehling.

On May 17 plaintiffs filed charges of unfair labor practices with the National Labor Relations Board (N. L. R. B.) against all the named defendants. It appears that the N. L. R. B. administratively determined that the operations of Jackson met the Board's jurisdictional standards.

As to Park Arlington, said corporation filed a commerce questionnaire from which one can infer the volume of business transacted by that defendant met the interstate commerce requirements of the N. L. R. B. These charges were subsequently withdrawn with the permission of the Board and this suit instituted.

Count 1 of the complaint alleges that the conduct of defendants Park Arlington, Jackson, Inc., Max Kessel and Stanley Jackson constituted a breach of contract for which plaintiffs seek damages. Count 2 sounds in tort, alleging interference with the collective bargaining agreements, for which damages and injunctive relief are sought. (A stipulation of dismissal has been filed as to Vehling.)

Defendants move to dismiss the complaint because of this court's lack of jurisdiction over the subject matter which they assert was pre-empted by Congress. Plaintiffs urge that count 1 of the complaint against the corporate defendants is for breach of the respective collective bargaining agreements, and that such suit is maintainable in the appropriate state court. *Charles Dowd Box Co. v. Courtney*, 368 *U. S.* 502, 82 *S. Ct.* 519, 7 *L. Ed. 2d* 483 (1962).

Defendants urge that the alleged breaches of the respective contracts stem from unfair labor practices, and that under the landmark decision in *San Diego Bldg. Trades Council v. Garmon*, 359 *U. S.* 236, 79 *S. Ct.* 773, 3 *L. Ed. 2d* 775 (1959), this court must defer jurisdiction in favor of the N. L. R. B.

Section 8 of the National Labor Relations Act, 61 *Stat.* 140, 29 *U. S. C. A.* § 158, provides that:

"(a) It shall be an unfair labor practice for an employer—

*  *  *  *  *  *  *  *

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *  *  *."

The activities of the corporate defendants, of which plaintiffs complain, constituted discrimination in regard to

employment the effect of which was to discourage membership in plaintiff union and to encourage membership in a carpenter's union. That an "unfair labor practice" is the root of plaintiffs' complaint is apparent from an affidavit filed in this proceeding by plaintiff McLaurin, wherein he deposed in part:

"On May 18, 1961, I and Oliver Thomas· [a coplaintiff] were talking to Max Kessel. He told us that if we joined another union he would employ us."

Thus it appears that the same acts constituting breaches of contract are also unfair labor practices. In such instances is the state court required to defer to the jurisdiction of the N. L. R. B.? This is a troublesome and complex issue. In this hazy area of the law it has been observed that:

"When a state court is called upon to determine whether a particular controversy is within state jurisdiction or is in the pre-empted field, except as to those relatively few controversies already passed on by the United States Supreme Court, the best that the state court can do, *sans* guide from the higher tribunal, is to make an informed guess on the subject." *Grunwald-Marx, Inc. v. Los Angeles Joint Board, etc.*, 52 *Cal.* 2d 568, 343 *P.* 2d 23, 28 (*Sup. Ct.* 1959).

Prior to *Garmon, supra,* a majority of the federal decisions held or implied that the federal courts have jurisdiction where the conduct complained of constitutes both a breach of contract and an unfair labor practice, and that in such instances jurisdiction has not been pre-empted in favor of the N. L. R. B. *Lodge No. 12, etc. v. Cameron Iron Works, Inc.,* 257 *F.* 2d 467 (5 *Cir.* 1958), *cert.* denied 358 *U. S.* 880, 79 *S. Ct.* 120, 3 *L. Ed.* 2d 110 (1958); *Independent Petroleum Workers of N. J. v. Esso Standard Oil Co.,* 235 *F.* 2d 401 (3 *Cir.* 1956); *Plumbers & Steamfitters Union, Local No. 598 v. Dillion,* 255 *F.* 2d 820 (9 *Cir.* 1958); *Reed v. Fawick Airflex Co.,* 86 *F. Supp.* 822 (*E. D. Ohio* 1949). *Contra: United Electrical,*

Radio & Machine Wkrs. of America v. General Electric Co., 97 U. S. App. D. C. 306, 231 F. 2d 259 (D. C. Cir. 1956), cert. denied 352 U. S. 872, 77 S. Ct. 95, 1 L. Ed. 2d 76 (1956).

Shortly before Garmon, the United States Supreme Court, in International Asso. Machinists v. Gonzales, 356 U. S. 617, 78 S. Ct. 923, 2 L. Ed. 2d 1018 (1958), held that a state court had the power to award damages to a wrongfully expelled union member for loss of wages and mental suffering resulting from a breach of his union membership contract. In Gonzales the court indicated that the state court regarded the litigation as one for breach of contract governing the relations between the respondent and his unions. The court points out in footnote 1 on page 622, on page 926 of 78 S. Ct. that the petition makes no charge of an "unfair labor practice," and that while the answer challenged the jurisdiction of the court, it said nothing about unfair labor practices. The question of unfair labor practice was not raised in the state court nor was any finding on the subject requested or made. Chief Justice Warren in his dissent in Gonzales, at page 632, at page 931 of 78 S. Ct. stated:

"The majority draws satisfaction from the fact that this was a suit for breach of contract, not an attempt to regulate or remedy union conduct designed to bring about an employer discrimination. But the presence or absence of pre-emption is a consequence of the effect of state action on the aims of federal legislation, not a game that is played with labels or an exercise in artful pleading."

In Garmon the majority opinion referred to the multitude of activities regulated by sections 7 and 8 of the National Labor Relations Act as "one of the most teasing and frequently litigated areas of industrial relations." It prescribed, 359 U. S., at page 244, 79 S. Ct., at page 779, the following rule to be applied in determining whether or not the subject matter of a particular litigation is preempted:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within a central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

\* \* \* \* \* \* \* \*

When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

\* \* \* \* \* \* \* \*

Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See *Garner v. Teamsters etc. Union*, 346 *U. S.* 485, 492–497, 74 *S. Ct.* 161, 166–169, 98 *L. Ed.* 228, 240–243. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict."

It is noted that in *Garmon* the court distinguishes *Gonzales* on the ground that the activity there regulated by the state was merely a "peripheral concern" of the Labor Management Relations Act, 29 *U. S. C. A.* § 141 *et seq.*

In *Grunwald-Marx, Inc. v. Los Angeles Joint Board, etc., supra,* the court indicated that there was language in *Garmon* to the effect that the pre-empted field extended beyond that held to exist in earlier decisions, but emphasized that the situation before it was not one where the same act constituted both an unfair labor practice and a breach of contract. As to that situation it expressed no opinion.

A situation somewhat similar to the case at bar was presented in *Smith v. Evening News Association,* 362 *Mich.* 350, 106 *N. W. 2d* 785 *(Sup. Ct.* 1961), *cert.* granted 369 *U. S.* ——, 82 *S. Ct.* 843 (March 26, 1962). There the collective bargaining agreement contained a provision, *inter alia,* that "There shall be no discrimination against any employee because of his membership or activity in the Guild." Plaintiff brought an action to recover damages for breach of that provision, claiming that the defendant's refusal to pay him full wages while it paid full wages to other employees constituted discrimination against him because of his membership in the Guild, and therefore was a violation of the quoted contract provision. Defendant moved to dismiss for lack of jurisdiction on the grounds that it was charged with acts which, if true, constituted an unfair labor practice as defined in the National Labor Relations Act, and that the N. L. R. B. in such instances is vested with exclusive jurisdiction of the subject matter. The court said that it was presented with the following question:

"Does a State court have jurisdiction of an action at law by an employee against his employer for breach of a contract between such employer and a labor organization to which such employee belongs where the action is based upon facts which if true would constitute both a breach of such contract and an unfair labor practice under the provisions of section 8(a) of the National Labor Relations Act as amended?"

It was stipulated that the defendant was engaged in commerce within the meaning of the National Labor Relations

Act and that the plaintiff failed to bring the complaint to the Board under the unfair labor practice provisions of the National Labor Relations Act until after the expiration of the statutory period for the bringing of such action. The court then said, at *page 787* of 106 *N. W. 2d:*

"The United States supreme court itself has found difficulty in reconciling the effect and meaning of its decisions on this field of law. It seems we must start with the general premise that Congress has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclusive jurisdiction in the National Labor Relations Board to determine such labor disputes where labor practices are either prohibited or protected by the Labor Management Relations Act."

It quoted at length from *Garmon* and concluded by stating (at page 793 of 106 *N. W. 2d*):

"The question in the instant case, then, is whether the alleged discrimination on the part of defendant-appellee would constitute an unfair labor practice under the National Relations Act, particularly under sections 7 or 8 thereof. It is agreed for the purpose of this case that the action alleged as constituting a breach of contract would also constitute an unfair labor practice. Plaintiff may not characterize an act which constitutes an unfair labor practice as a contract violation and thereby circumvent the plain mandate of Congress—that jurisdiction of such matters be vested in the National Labor Relations Board and that Federal and State trial courts are without jurisdiction to redress by injunction or otherwise unfair labor practices. If the rule were otherwise, then Federal and State courts could assume jurisdiction over all types of unfair labor practices under the guise of enforcing the terms of the collective bargaining agreement, provided the agreement contains terms governing such matters, and thereby circumvent the plain mandate of Congress.

In the instant case the damages would appear to be the loss of wages. The National Labor Relations Board under section 10(c) of the act has adequate authority to adjust the wrong by requiring the payment of back wages.

Since it is, to say the least, fairly debatable whether the conduct here involved is federally protected, then under both the majority and concurring opinions of Garmon, the judgment of the trial court must be affirmed."

*Cf. Green v. Folks,* 13 *App. Div. 2d* 744, 215 *N. Y. S. 2d* 116 (*App. Div.* 1961); *Wax v. International Mailers Union,*

400 *Pa.* 173, 161 *A. 2d* 603 (*Sup. Ct.* 1960); *Tacoma Typographical Union, etc. v. Puyallup Valley Tribune, Inc.,* 49 *L. R. R. M.* 2230 (*Wash. Super. Ct.* 1961). But *cf. Portland Web Pressmen's Union v. Oregonian Pub. Co.,* 286 *F. 2d* 4 (9 *Cir.* 1960), *cert.* denied 366 *U. S.* 912, 81 *S. Ct.* 1086, 6 *L. Ed. 2d* 237 (1961).

█ In essence, the situation presented in count 1 of the complaint is one where the plaintiff union alleged the right of its members under the respective collective bargaining agreements to "tend to the carpenters." The representative for the carpenters union arbitrarily determined that the carpenters were to carry their own materials. The employers, in an effort to avoid "trouble," acceded to the demands of Sassone. True, the allegations support a breach of a substantial provision in the respective collective bargaining agreements. However, such breaches arise out of alleged conduct committed by the defendants which may fairly be assumed to constitute unfair labor practices under section 8 of the National Labor Relations Act. The label "breach of contract" should not be permitted to frustrate federal regulation and national policy. Thus, under *Garmon,* the conduct is "plainly within the aim of central regulation," and when such activity is arguably subject to section 7 or section 8 of the act, the state as well as the federal courts must defer to the exclusive competence of the N. L. R. B. Assuming, *arguendo,* doubt regarding the scope of pre-emption, that doubt is to be resolved in favor of the N. L. R. B. *Dooley v. Anton,* 8 *N. Y. 2d* 91, 202 *N. Y. S. 2d* 273, 168 *N. E. 2d* 356 (*Ct. App.* 1960). Additionally, it may be observed that no action is maintainable against Stanley Jackson and Max Kessel individually for breach of contract. The contracts were signed by them in their representative capacities for the respective corporate defendants.

█ Count 2 of the complaint alleges that the corporate defendants and their respective presidents, together with Sassone, conspired to breach the collective bargaining agree-

ments, to discharge the individual plaintiffs without just cause, and to induce members of plaintiff union to discontinue their membership therein and to join other unions. The prayers for relief include, *inter alia,* a claim for money damages, injunctive relief against the corporate defendants and their officers from violating said collective bargaining agreements (now a moot request), and injunctive relief against defendant Sassone from inducing violations of said collective bargaining agreements. They also seek, generally, to restrain Sassone from inducing or coercing members of plaintiff union to discontinue their membership and join other unions. Actually plaintiffs claim a tortious interference with their contractual rights, predicated upon unfair labor practices.

As to the corporate defendants, since pre-emption applies under count 1, the principle is equally applicable to count 2. With respect to the complaint against Max Kessel and Stanley Jackson, the presidents of the respective corporate defendants, section 2(2) of the National Labor Relations Act defines the term "employer" as including "any person acting as an agent of an employer, directly or indirectly." Thus, these corporate agents are likewise subject to the provisions of section 8(a) of the act.

As to defendant Sassone, since his alleged tortious conduct is arguably an unfair labor practice, this court has no power to award a remedy to plaintiffs, for section 8(b) of the National Labor Relations Act encompasses not only labor organizations but their agents as well. Sassone's alleged tortious conduct appears to be in violation of section 8(b)(2) of the act in that he has caused the defendant employers to discriminate against employees. Likewise, his conduct falls at least arguably within the prohibited area of section 8(b)(4)(ii)(D) in that he arbitrarily required the employer to assign "tending to carpenters" to his own union men rather than the members of plaintiffs' union who had an agreement to that effect. Under *Garmon* the

state court is deprived of the power to act and must defer jurisdiction to the N. L. R. B.

Congress by the enactment of section 303 of the Labor Management Relations Act of 1947, 61 *Stat.* 156, 29 *U. S. C. A.* § 187 (*L. M. R. A.*), has allowed the courts, both federal and state, to entertain suits against a labor organization for money damages in a limited area, to wit: where the conduct of a labor organization falls within the prohibited area of section 8(b)(4) of the National Labor Relations Act. In such instances, anyone injured may sue the labor organization in the courts. This remedy is independent of and concurrent with the remedy available from the N. L. R. B. under the various provisions of section 10 of the National Labor Relations Act. *International L. & W. U. v. Juneau Corp.*, 342 *U. S.* 237, 72 *S. Ct.* 235, 96 *L. Ed.* 275 (1952); *East Photo Lab. v. Blue Print Photostat and Photo Employees Union, etc.*, 71 *N. J. Super.* 385 (*Law Div.* 1961).

Since Congress has under section 303 of the L. M. R. A. specified the unfair labor practices which may be actionable in a state or federal court, it is necessary to satisfy the prerequisites of that section in order to maintain such action. Section 303(a) prohibits the *labor organization* from engaging in certain activities and only makes it—not the individual agents—liable for any violation. *Morgan Drive Away, Inc. v. Teamsters,* 166 *F. Supp.* 885 (*S. D. Ind.* 1958). Thus section 303 of the L. M. R. A. affords no basis for an action against Sassone and does not bar pre-emption as to count 2 of the complaint.

Additionally, since the complaint does not allege facts showing violence or imminent threats to the public order, no injunctive relief is available to plaintiffs against defendant Sassone. *Garmon, supra.*

The motions to dismiss the complaint are granted. An appropriate form of judgment will be submitted, consented to as to form or to be settled upon notice.