142 So.2d 290 (1962)
SCHERER & SONS, INC., a Florida Corporation, Petitioner,
v.
INTERNATIONAL LADIES' GARMENT WORKERS' UNION, LOCAL 415, International Ladies' Garment Workers Union, AFL-CIO; Miami Joint Council of the International Ladies' Garment Workers' Union, AFL-CIO; All Unincorporated Voluntary Associations; James Belluso, Individually and As Business Agent of Said International, and/or Said Local 415, and/or Said Miami Joint Council; Harry Metz, Individually and As Business Agent of Said International and/or Said Local, and/or Said Miami Joint Council; Robert Gladnick, Individually and As Manager of Said International, and/or Said Local 415, and/or Said Miami Joint Council; and the Florida Apparel Manufacturers' Association, Inc., a Florida Corporation, Respondents.
No. 31484.
Supreme Court of Florida.
May 9, 1962.
Rehearing Denied July 6, 1962.
*291 Marchant, Perkins, Cook & Schenerlein, Miami, for petitioner.
Orr & Lazar, Miami Beach, and Robert Cohn, Atlanta, Ga., for respondents International Ladies' Garment Workers' Union, Local 415, and others.
Harry B. Smith, Miami Beach, for respondent Florida Apparel Manufacturers' Assn., Inc.
THORNAL, Justice.
By a petition for a writ of certiorari we have for review a decision of a District Court of Appeal certified to us by that court as involving a question of great public interest.
We must determine whether, under the circumstances presented, state injunctive relief against a contract allegedly violative of Section 542.05, Florida Statutes, F.S.A., is precluded by the provisions of the Labor Management Relations Act, 1947, under the doctrine of preemption.
The decision which we have under review is International Ladies' Garment Workers' Union, et al. v. Scherer and Sons, Inc., Fla.App., 132 So.2d 359. Inasmuch as the matter is certified to us by the District Court of Appeal we may explore the entire record in arriving at our conclusion. *292 Article V, Section 4, Florida Constitution, F.S.A.; Susco Car Rental System of Florida v. Leonard, Fla., 112 So.2d 832; Carraway v. Revell, 116 So.2d 16.
The respondent International Ladies' Garment Workers' Union, Local 415, hereafter referred to as the Union, entered into a collective bargaining agreement with the respondent Florida Apparel Manufacturers' Association. The agreement, which was dated October 25, 1960, contained the following provisions:
"Belts, covered buttons, buckles, neckwear, artificial flowers, embroideries, hemstitching, pleating and tucking on garments, etc., which are caused by members of the Association to be manufactured for them shall be made only by workers covered by collective bargaining agreements with the Union, the International, or affiliates thereof. In case a member of the Association shall have this work done by a non-Union shop, then, upon notification by the Union of this fact, the employer shall discontinue to give out such work to such non-Union shop or shops."
The membership of the Manufacturers' Association consists of thirty-six manufacturers of ladies' garments in the greater Miami area. Petitioner Scherer is engaged primarily in the business of manufacturing belts and accessories for such garments in the same area. For a number of years prior to the agreement in question members of the Manufacturers' Association had been customers of Scherer. Because of the provisions of the collective bargaining agreement, which we have quoted, these members of the Manufacturers' Association thereafter refused to do business with Scherer. They based their refusal upon the prohibitions of the Collective Bargaining Agreement executed with the respondent Union. Scherer operates a non-union shop. Contending that the agreement constituted an unlawful restraint of trade, violative of Section 542.05, Florida Statutes, F.S.A., Scherer requested and obtained a temporary injunction against the continued enforcement of the agreement. It alleged and the District Court found that it proved that irreparable injury resulted from the agreement. The District Court of Appeal reversed the award of the injunction. It held in substance that the contract between the Union and Manufacturers' Association was arguably subject to condemnation as an unfair labor practice. It concluded that any state action thereon had been preempted by federal statutes even though the contract constituted a violation of the Florida Statute which prohibits such arrangements in restraint of trade. It is this decision which we must now consider.
Section 542.05, Florida Statutes, F.S.A., invalidates combinations in restraint of trade defined as follows, to wit:
"Any person who shall or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or of either two or more of them, for either, any or all of the following purposes:
"(1) To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state;
"(2) To increase or reduce the price of merchandise, produce or commodities;
"(3) To prevent competition in the manufacture, making, transportation, sale or purchase of merchandise, produce, or commodities, or to prevent competition in aids to commerce;
"(4) To fix at any standard or figure whereby its price to the public shall be in any manner controlled or established any article or commodity of merchandise, produce, or commerce intended for sale, use, or consumption in this state; or * * *."
*293 The complaint for the temporary injunction was grounded entirely upon the alleged violation of the Florida Statute. The injunction was granted entirely on the theory that the statute had been violated. The Union defended against the injunction and obtained reversal in the District Court with the contention that the Federal Government had preempted the filed of labor relations by the enactment of the Labor Management Relations Act, 1947, commonly known as the Taft-Hartley Act, Title 29 U.S.C.A. § 141 et seq. In particular, it was contended that the collective bargaining agreement entered into between the Manufacturers' Association and Union was at least arguably subject to condemnation as an unfair labor practice. Hence, it was asserted that the initial determination regarding the validity of the agreement rested with the National Labor Relations Board, rather than with the state courts. The pertinent provision of the Taft-Hartley Act, 29 U.S.C.A. § 158(e), reads in part as follows:
"(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void: * * * Provided further, That for the purposes of this subsection and subsection (b) (4) (B) of this section the terms `any employer', `any person engaged in commerce or an industry affecting commerce', and `any person' when used in relation to the terms `any other producer, processor, or manufacturer', `any other employer', or `any other person' shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: Provided further, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception."
The Union likewise contended that the collective bargaining agreement was at least arguably subject to the federal prohibitions against secondary boycotts contained in 29 U.S.C.A., § 158(b) (4) (ii) (B). The problem which we must resolve requires a decision as to whether the subject arrangement between the Union and the Manufacturers' Association is within the comprehension of the Taft-Hartley Act as a problem for initial consideration by the National Labor Relations Board. Otherwise stated, the Union here asserts that regardless of state legislation on the subject the power to regulate this particular type of contract has been preempted by the Congress.
Admittedly, many aspects of control of labor relations have been left to the states. It must be conceded, however, that where a given situation is "arguably subject" to the prohibitions or protections of the Taft-Hartley Act, the federal government has preempted state action, at least to the extent of conveying to the National Labor Relations Board the initial jurisdiction to determine the applicability of the federal law.
We do not overlook the contention of petitioner Scherer to the effect that it is here seeking the protections of Florida's statute prohibiting restraints of trade independently of the federal statute. However, it is clear that in the area of labor relations, where an Act of Congress sufficiently expresses the purpose of subjecting a given situation to federal supervision thereby excluding initial state control, then any state regulation must give precedence to federal jurisdiction. This is so even *294 though the matter which has been subjected to federal labor regulations might also be included in a related state concern evidenced by its restraint of trade statutes. Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546. Certain general principles have evolved in the decisions dealing with this subject. Among these are the following:
1. A state may not prohibit the exercise of rights which the Taft-Hartley Act protects.
2. A state may not assert its injunctive processes against "an unfair labor practice" defined by federal statutes.
3. A state may enforce its injunctive processes against conduct of a union which is neither protected nor prohibited by federal labor statutes.
Illustrative of the third category is mass picketing or picketing which creates a breach of the peace. If a given situation may reasonably be classified in the first and second categories then state jurisdiction must accede to the agency which Congress has selected for the initial determination of the issues. Weber v. Anheuser-Busch, Inc., supra; Garner v. Teamsters, C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Local 24 of I.B. of T., C., W. & H. v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312.
The District Court correctly concluded that the factual situation reflected by the instant complaint was arguably subject to the jurisdiction of National Labor Relations Board under Title 29 U.S.C.A., § 158 (e) which we have quoted above. This is so because conceivably the collective bargaining agreement between the Union and the Manufacturers' Association could be construed as an unfair labor practice or conversely as a protected arrangement under the "garment industry proviso" likewise announced in the same statutory provision. At least under the Taft-Hartley Act, the National Labor Relations Board would be the appropriate forum to determine initially the presence or absence of federal jurisdiction.
In the event that the National Labor Relations Board should disclaim jurisdiction, then under recent amendments to the Taft-Hartley Act, the state courts would be free to proceed. Title 29 U.S.C.A. § 401 et seq, otherwise known as the Labor Management Reporting and Disclosure Act of 1959. See also Vanderbilt Law Review, Vol. 13, No. 1, page 416, December 1959. Congress has likewise recently provided an expeditious procedure for obtaining prompt advisory opinions of the National Labor Relations Board regarding its jurisdiction in a particular situation. 29 U.S.C.A. Appendix § 101.39 et seq.
Appellant relies strongly on United Construction Workers v. Laburnum, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, where the Supreme Court of the United States affirmed state court action in allowing damages for a common law tort resulting from Union action which threatened violence incident to demands for a union shop. The decision turned on the proposition that the subject action was neither prohibited nor protected by the Taft-Hartley Act. It was subsequently construed to permit recovery for damages only as a result of conduct which otherwise would have been the subject of a state court injunction. This was the construction placed upon Laburnum in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. By Garmon it appears that the Supreme Court of the United States has limited the recovery of damages in state courts to those situations which would be subject to the state's injunctive processes such as violent picketing.
Appellant also relies upon International Union v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651, and Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691. In these cases, however, the state's injunctive processes were permitted against situations *295 which were neither prohibited nor protected by the Taft-Hartley Act.
In its brief here appellant also asserts that the collective bargaining agreement collides with Florida's so-called "right to work amendment" found in Section 12, Declaration of Rights, Florida Constitution, F.S.A. This provision of the Florida organic law reads as follows:
"The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."
It is then contended that state jurisdiction is preserved by 29 U.S.C.A. § 164(b) which reads as follows:
"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or territory in which such execution or application is prohibited by State or Territorial law."
Unfortunately for the appellant this aspect of the problem was neither urged by the complaint nor supported by the evidence presented to the chancellor on the application for the temporary injunction. Although the point was raised by a petition for rehearing in the District Court, it was not argued in the briefs nor supported by the record presented to that court.
Conceivably, the secondary economic pressures exerted upon appellant by the disputed provision in the collective bargaining agreement could force appellant into a dilemma which would be tantamount to a taking of its property without due process. It could be confronted by a situation where the only alternative to preserving itself against irreparable harm would be the compulsion to require its employees to join a union as a condition to employment. Such compulsive pressures would then squarely present the Florida "right to work" issue. Certainly, if this situation could be supported by evidence upon a remand, then the Taft-Hartley recognition of permissible state concern in the enforcement of its right-to-work provisions would support state action. In the area of protecting state policy under right-to-work provisions the Congress has expressly ceded initial jurisdiction to the states. Since the matter was before the chancellor only upon an application for a temporary restraining order based upon the Florida restraint of trade statute, we feel that upon remand the appellant should be accorded an opportunity to establish by evidence the applicability of Florida's right-to-work amendment if it so desires and is in a position to do so. We, therefore, hold that when this cause is remanded to the chancellor it should be without prejudice to any rights of appellant in this regard.
We might interpolate that in this broad area of labor relations, unless state jurisdiction is clear, time, effort and money could be conserved by initially employing the expeditious procedure which the Congress has now established to obtain a preliminary determination of jurisdiction by the National Labor Relations Board. Subject to the privileges extended to appellant with reference to Florida's right-to-work amendment we hold that the decision of the Court of Appeal must be approved. We discharge the writ of certiorari but remand the cause to the District Court with directions to remand the same to the Circuit Court for further proceedings not inconsistent with this opinion.
It is so ordered.
ROBERTS, C.J., THOMAS, DREW, O'CONNELL and HOBSON (retired), JJ., and PARKS (retired), Circuit Judge, concur.