ALLEN, Judge
This is an appeal from a final order permanently enjoining appellant union and certain of its members from engaging in concerted activities in the vicinity of appellee’s manufacturing establishment. The injunction also enjoined the union and certain named employees from fostering and engaging in a slow-down at appellee’s plant. Said order was granted after a hearing on appellee’s complaint which alleged that appellants’ activities were interfering with ap-pellee’s contractual relations with its customers and, if allowed to continue, would cause irreparable injury to appellee’s business.
Appellee is engaged in the manufacture of metal containers for guided missiles. Its principal customers at the time of the lower court’s injunction were the Martin Company in Orlando and the United States Government. Most of the raw. materials ultimately incorporated into ap-pellee’s finished product were purchased outside the State of Florida. Appellee was, therefore, engaged in an industry affecting; *47 Interstate Commerce as defined by § 1 of the National Labor Relations Act, 29 U.S.C.A. § 151. National Labor Relations Board v. Fainblatt, 1939, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427 v. Fairlawn Meats, Inc., 1957, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; International Broth. of Elec. Workers, Local 349 v. Shires, Fla. App.1960, 123 So.2d 259.
In its order the lower court found that it had jurisdiction over the parties and the subject matter; that the defendants had caused an unlawful slow-down in production by engaging in slow-down tactics at various times while in the employ of plaintiff-appellee in an effort to interfere with the plaintiff’s contractual relationships with its customers; that the plaintiff lawfully discharged certain named defendants for their wrongful activities and that there was no bona fide labor dispute existing between the plaintiff and the individual defendants during the period of time involved in the slow-down and picketing; that said named defendants employed by plaintiff were lawfully discharged, were properly before the court as parties defendant and were subject to its orders; that the true purpose of the picketing was in protest of the discharge of the defendants engaged in the slow-down; that the actions of the union and the named defendants were an unjustified interference with the plaintiff’s business; and that the plaintiff suffered irreparable damage on account of the picketing and other activities of the defendants. Whereupon, the lower court entered the following four paragraph injunction which, •in effect, enjoined the activities disclosed by the aforesaid findings and in addition, in paragraph 2, enjoined any violent conduct or the threat thereof as, so the record shows, was disclosed by the evidence adduced at the hearing.
“1. That the Defendant, UNITED STEELWORKERS OF AMERICA, AFL-CIO, LOCAL NO. 6140, its .agents, servants, employees, successors, and all other persons acting, or pretending to act, in its behalf, and the individuals named in Paragraph 4 of the findings of fact are enjoined and restrained from engaging in or causing any slow-down activities or any other unjustified interference with production at the plant of Nubar Tool and Engineering Company, Inc., 3400 North Orange Blossom Trail, Orlando, Florida, the Plaintiff in this cause;
“2. * * * are enjoined and restrained from molesting, interfering, intimidating, coercing, or directing any violence towards the Plaintiff, its property, its employees or servants, or any person or persons, corporate or unin-corporate, who have a business relationship with the Plaintiff;
“3. * * * are enjoined and restrained from publishing or causing to be published any statement to the effect that a lockout was in effect at the plant of the Plaintiff or that the Plaintiff refused to recognize and bargain with the Defendant Union during the month of November, 1961.
“4. * * * are enjoiped and restrained from engaging in any picketing or causing to be picketed the Nu-bar Tool and Engineering Company, Inc., its environs or approaches, or loitering, congregating, or unnecessarily being in the vicinity of the right-of-way or entrances of the Plaintiff, or from carrying any placards or emblems or propaganda of any nature, kind, or description creating a false impression in the mind of the public that the Plaintiff has been unfair to organized labor, unfair to the Defendant Union, or unfair to any or all individual Defendants for the purpose or objective of protesting the basis of discharge by the Plaintiff of the individuals named in Paragraph 4 of the findings of fact, of protesting the good faith of the Plaintiff in bargaining with the Defendant Union, or of protesting *48 any of the events which occurred prior to the date of the entry of this Order; but that nothing- herein shall restrain or enjoin the defendants as members of the defendant union, or the defendant union, from peacefully picketing the premises of the plaintiff for such lawful purposes as may hereafter arise.”
Except for its finding that there was no bona fide labor dispute, we are of the view that the findings of the lower court are supported by sufficient evidence; and were the subject matter of this cause not within the purview of the national labor policy, we would not disturb them. However, the testimony adduced at the hearing, in addition to other pertinent data disclosed by the record, convinces us that the lower court was without jurisdiction to make those findings and likewise to enter the injunction thereon. This does not hold true as to that part of the injunction directed at violence appearing in paragraph 2 thereof.
Summarizing the testimony and other evidence appearing in the record, it appears that appellant union, late in October of 1961, was certified by the N. L. R. B. as the bargaining representative of appel-lee’s employees for the purpose of coming to terms on a collective bargaining agreement. Shortly thereafter, and apparently during all times material to this cause, bargaining was carried on between appel-lee and the appellant union in an effort to reach an agreement on the terms and conditions of employment of appellee’s employees. Contemporaneously therewith, certain of the employees, possibly at the instigation of the union, began to engage in concerted activities at appellee’s plant. We shall not attempt to speculate as to whether or not the purpose of such activities, at least at their outset, was to enhance the union’s economic bargaining position at the bargaining table. Testimony reveals that three employees, one a shop steward, were fired off the night shift. As near as we can tell, this particular firing precipitated a chain reaction of recriminating conduct directed by the employees to the employer and vice versa.
The employer’s and the union’s versions as to why these employees were fired are in conflict. Union testimony is to the effect that the employees were fi.red for organizational activities in soliciting union membership. Employer testimony, however, is that they were discharged for failure to perform their work properly and for spending too much time loitering when they should have been at work. An employee by the name of Kirkland, a punch press operator and the president of the local, was observed by the employer, according to the latter’s testimony, slowing down on the job. Kirkland, however, testified that he did not at that particular time or any other time intentionally slow down his .rate of production, but that the employer, in retaliation for the union’s organizational activities, had stepped up the rate of production required of Kirkland in order to have an excuse to fire him when and if he failed to perform accordingly. At any rate, when Kirkland refused to respond to a direct order of the employer to work faster he was discharged. This firing took place in the presence of many other employees and tempers were apparently running fairly high. Othér employees left their machines and attempted to have the employer take Kirkland back. Thereafter, several other employees engaged in alleged slow-down activities and some walked off the job, both measures being taken in protest of Kirkland’s firing. There is evidence that at one point in the altercation a deputy sheriff’s presence was required in order to insure the maintenance of order and the peaceful departure of employees from the employer’s premises. Other employees purportedly engaged in slow-down activities were also discharged which, in turn, caused even more employees to quit in protest thereof. All employees accused of slow-down activities, however, denied, when testifying, that they ever engaged in same. The striking employees later took *49 up positions outside the employer’s plant and began to picket and carry placards in protest of the aforementioned employee discharges. There were no actual acts of violence but there was testimony that, on the night that Kirkland was discharged, at least some threats of violence were made. It appears, however, that once tempers had cooled no further violence or threats thereof were contemplated.
This court is of the opinion that some of the foregoing activities on the part of the union, such as peaceful picketing and the carrying of placards, are arguably protected and thus arguably permitted under the provisions of § 7 of the N.L.R.A., 29 U.S.C.A. § 157. It is also arguable that some of the more economically coercive tactics employed by the union, such as the slow-down, are neither protected by the said § 7 nor prohibited by § 8(b) of the act, 29 U.S.C.A. § 158(b), which latter section purports to define those activities, which if engaged in by a union, amount to unfair labor practices. See International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Emp. Rel. Bd., 1949, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651. Likewise, if the employer fired Kirkland and the others because of their organizational activ ities, it seems fairly clear that such would be an employer unfair labor practice and prohibited by § 8(a) of the N. L. R. A., 29 U.S.C.A., § 158(a). Clearly a state court may not, by the injunctive process, prohibit the exercise of rights protected by the federal labor policy as expressed in the N.L.R.A. as amended. Hill v. Florida, 1945, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782. Nor may a state enjoin conduct which has been made an unfair labor practice under federal law. Garner v. Teamsters Chauffeurs & Helpers Local No. 776, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 288. An exception to this latter provision does permit a state to enjoin violence or similar conduct notwithstanding the fact that the acts enjoined arise within the context of a labor dispute and also amount to an unfair labor practice under federal law. United Auto, Aircraft & Agr. Implement Workers v. Wisconsin Emp. Rel. Bd., 1956, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162.
Equally clear is the provision that activities engaged in by unions and/or employers arising out of a labor dispute may be .regulated by the states if such activities are neither protected nor prohibited under sections 7 and 8 of the N.L.R.A., supra. See International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Emp. Rel. Bd., supra.
However, where, as here, a substantial task of fact finding is required to determine whether or not the labor activities involved are protected or prohibited under the federal act or neither, primary authority to make such a determination lies exclusively with the N.L.R.B. Under the holding in San Diego Bldg. Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, a state must yield the task of classifying activities arguably protected or prohibited by federal law to the N.L.R.B. Accord, In re Green, 1962, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198; see Delony, State Power to Regulate Labor-Management Relations, appearing in Symposium on the Labor-Management Reporting and Disclosure Act of 1959, 1961, edited by Ralph Slovenko, Tulane University School of Law, and published by Claitor’s Bookstore, Baton Rouge, La.
Tracing the history of judicial interpretation of the N.L.R.A. as regards the area of protection left to state courts, Mr. Justice Frankfurter, speaking for the Court in the Garmon case, supra, discussed the problem before it as follows, beginning at 359 U.S. 236, 79 S.Ct. 779, 3 L.Ed.2d 783:
“At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such *50 issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court’s authority cannot remain within a State’s power and state jurisdiction too must yield to the exclusive primary competence of the Board. See, e. g., Garner v. Teamsters [C. & H. Local] etc. Union, 346 U.S. 485, especially at pages 489-491, 74 S.Ct. 161, at pages 165-166, 98 L.Ed. 228 [238-240]; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546.
“The case before us is such a case. The adjudication in California . has throughout been based on the assumption that the behavior of the petitioning unions constituted an unfair labor practice. This conclusion was derived by the California courts from the facts as well as from their view of the Act. It is not for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. [Ibid.]
“To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601. In that case we held that the failure of the National Labor Relations Board to assume jurisdiction did not leave the 'States free to regulate activities they would otherwise be precluded from regulating. It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. In the absence of the Board’s clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. The withdrawal of this narrow area from possible state activity follows from our decisions in Weber and Guss. The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.
“In the light of these principles the case before us is clear. Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State’s jurisdiction is displaced.
“Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national *51 policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States’ salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See Garner v. Teamsters [C. & H. Local], etc. Union, 346 U.S. 485, 492-497, 74 S.Ct. 161, 166-169, 98 L.Ed. 228 [240-243], It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two lawmaking sources to govern. In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations. Board only accentuates the danger of conflict.
“It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030; United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. We have also allowed the States to enjoin such conduct. Youngdahl v. Rainfair, Inc. 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 835, 98 L.Ed. 1025, found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the ‘type of conduct’ involved, i. e., ‘intimidation and threats of violence.’ In the present case there is no such compelling state interest.” (Emphasis supplied.)
In the recent case of Scherer & Sons, Inc. v. International Ladies’ Garment Workers’ Union, Fla.1962, 142 So.2d 290, the Florida Supreme Court gave ample indication that the courts of this State are to adhere to the Garmon doctrine. The trial court, in the Scherer case, at the behest of the employer, had granted an injunction against the enforcement of a collective bargaining agreement on the grounds that said agreement was in restraint of trade and violative of a state statute, § 542.05, F.S.A. The District Court of Appeal, 3rd District, set aside the injunction, 132 So.2d 359, holding that the contract involved was arguably subject to condemnation as an unfair labor practice and therefore, State action thereon had been preempted by the federal labor statutes. Upon petition for writ of certiorari, the cause was certified to the Florida Supreme Court as involving- a question of great public interest. The Supreme Court, excluding any considerations given by it to Florida’s right to work law, affirmed the decision of the District Court of Appeal.
*52 Speaking for the Court, Mr. Justice Thornal stated at 142 So.2d 293, 294:
“ * * * The problem which we must resolve requires a decision as to whether the subject arrangement between the Union and the Manufacturers’ Association is within the comprehension of the Taft-Hartley Act as a problem for initial consideration by the National Labor Relations Board. Otherwise stated, the Union here asserts that regardless of state legislation on the subject the power to regulate this particular type of contract has been preempted by the Congress.
“Admittedly, many aspects of control of labor relations have been left to the states. It must be conceded, however, that where a given situation is ‘arguably subject’ to the prohibitions or protections of the Taft-Hartley Act, the federal government has preempted state action, at least to the extent of conveying to the National Labor Relations Board the initial jurisdiction to determine the applicability of the federal law.
* * * * * *
“The District Court correctly concluded that the factual situation reflected by the instant complaint was arguably subject to the jurisdiction of National Labor Relations Board under Title 29 U.S.C.A., § 158(e) which we have quoted above. This is so because conceivably the collective bargaining agreement between the Union and the Manufacturers’ Association could be construed as an unfair labor practice or conversely as a protected arrangement under the ‘garment industry proviso’ likewise announced in the same statutory provision. At least under the Taft-Hartley Act, the National Labor Relations Board would be the appropriate forum to determine initially the presence or absence of federal jurisdiction.
“In the event that the National Labor Relations Board should disclaim jurisdiction, then under recent amendments to the Taft-Hartley Act, the state courts would be free to proceed. Title 29 U.S.C.A. § 401 et seq, otherwise known as the Labor Management Reporting and Disclosure Act of 1959. See also Vanderbilt Law Review, Vol. 13, No. 1, page 416, December 1959. Congress has likewise recently provided an expeditious procedure for obtaining prompt advisory opinions of the National Labor Relations Board regarding its jurisdiction in a particular situation. 29 U.S.C.A.Appendix § 101.39 et seq.” (Emphasis added.)
Again at page 295 of 142 So.2d, Mr. Justice Thornal made passing reference to the most expeditious course for parties to a labor dispute to follow in cases where the jurisdictional lines are not clearly drawn.
“We might interpolate that in this broad area of labor relations, unless state jurisdiction is clear, time, effort and money could be conserved by initially employing the expeditious procedure which the Congress has now established to obtain a preliminary determination of jurisdiction by the National Labor Relations Board. * * * »
As in the Scherer case, supra, there is nothing in the record in the instant case to show that the N.L.R.B. has disclaimed jurisdiction. Presumably, if a dispute arose involving an industry affecting commerce which’ fell outside the jurisdictional standards set by the N.L.R.B., it would be incumbent upon the party seeking to invoke the jurisdiction of a State court to so demonstrate either by obtaining a ruling of the Board itself or proffering to the court the board’s published’rules indicating its declination of jurisdiction. See 29 U.S.C.A. § 164(c) (1). An alternate procedure would be to obtain an advisory *53 opinion from the N.L.R.B. regarding its jurisdiction in a given situation. 29 U.S. C.A.Appx. § 109.39 et seq.
Other cases supporting our conclusion that Florida adheres to the so called Garmon doctrine are North Dade Plumbing, Inc. v. Bowen, Fla.App.1960, 116 So.2d 790; Wood, Wire & Metal Lathers Intern. Union, etc. v. Babcock Co., Fla.App.1961, 132 So.2d 16.
Having concluded that most of the activities enjoined by the lower court were arguably protected or prohibited by the national act or neither, we hold that the lower court was without jurisdiction to enjoin them and that the order appealed from must be reversed at least in part. Such findings as the lower court may have made as to violence and/or the threat thereof, however, we do not disturb and So much of the injunction as is directed to acts of violence, intimidation, threats, etc., we allow to stand. See Youngdahl v. Rainfair, 1957, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151. Thus, paragraphs 1, 3 and 4 of the lower court’s injunction, supra, are unenforceable. Paragraph 2 of said injunction remains of full force and effect.
Nothing herein should be construed as prohibiting a party, either union or employer, to a collective bargaining contract from seeking damages for its breach in an .appropriate state tribunal. See Dowd Box Co. v. Courtney, 1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483.
The decision of this court in respect to jurisdiction having rendered the other questions raised in this appeal moot, the order appealed from must be and is affirmed in part and reversed in part.
SHANNON, C. J., and WHITE, J., concur.