## UNITED AUTOMOBILE, AIRCRAFT & AGRICUL-TURAL IMPLEMENT WORKERS OF AMERICA v. WISCONSIN EMPLOYMENT RELATIONS BOARD ET AL.

No. 530.   Argued April 24–25, 1956.—Decided June 4, 1956.

*Kurt L. Hanslowe* argued the cause for appellant. With him on the brief were *Harold A. Cranefield, Max Raskin* and *Redmond H. Roche, Jr.*

*Beatrice Lampert,* Assistant Attorney General of Wisconsin, argued the cause for the Wisconsin Employment Relations Board, appellee. With her on the brief were *Vernon W. Thomson,* Attorney General, and *Stewart G. Honeck,* Deputy Attorney General.

*Jerome Powell* argued the cause for the Kohler Company, appellee. With him on the brief were *John C. Gall, John F. Lane, William F. Howe* and *Lyman C. Conger.*

Briefs of *amici curiae* urging affirmance were filed by *John Ben Shepperd,* Attorney General, and *Burnell Waldrep, Philip Sanders* and *John Atchison,* Assistant Attorneys General, for the State of Texas, and *E. R. Callister,* Attorney General, and *Raymond W. Gee,* Assistant Attorney General, for the State of Utah, and *Eugene Cook,* Attorney General, for the State of Georgia.

MR. JUSTICE REED delivered the opinion of the Court.

This case, as stated in the brief for the United Automobile, Aircraft and Agricultural Implement Workers of America, presents the question whether or not a State may enjoin through its labor statute, the Wisconsin Employment Peace Act, union conduct of a kind which may be an unfair labor practice under the National Labor Relations Act, as amended.[1]

---

[1] The question presented is narrowed by appellant in another paragraph to apply only to instances, as here, where the National Board has asserted jurisdiction over certain other labor practices arising from the same employer-union relationship. These proceedings include a plea by the employer that the state-enjoined union conduct constitutes a defense to a union charge filed with the Board. Appellant also asserted that the State should act only after the Board

Appellant concedes that a State may punish violence arising in labor relation controversies under its generally applicable criminal statutes. It does not admit or deny the charged violence. The union considers the coercion immaterial in this case. Its position is that a State may not exercise this police power through an agency that is concerned only with labor relations. The argument is that a State Board will use this power to stop force and violence in order to further state labor policy, thus creating a conflict with the federal policy as developed by the National Labor Relations Board. The union argues that Wisconsin has no jurisdiction to enjoin the alleged conduct under its labor act because such conduct would be an unfair labor practice under the National Labor Relations Act.

This controversy arose out of the failure of appellant and the Kohler Company to reach an accord concerning a new collective-bargaining agreement. As the parties were unable to agree, Kohler's production workers struck and picketed the premises of the company. Ten days later Kohler filed a complaint with the Wisconsin Employment Relations Board charging appellant and others with committing unfair labor practices within the meaning of the Wisconsin Employment Peace Act.[2] It was alleged that appellant's members had engaged in mass picketing, thereby obstructing ingress to and egress from the Kohler plant; interfered with the free and uninter-

---

has passed upon the pending union complaint. In view of our disposition of this appeal, we do not consider these narrower issues material.

[2] Wisconsin Statutes, 1953, c. 111, p. 1903.

§ 111.04, p. 1905:

"111.04 *Rights of employes.* Employes shall have the right of self-organization and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such

rupted use of public ways; prevented persons desiring to be employed by Kohler from entering the plant; and coerced employees who desired to work, and threatened them and their families with physical injury. The State Board found the allegations to be true and issued an order that directed the union and certain of its members to cease all such activities. The order appears below.[3]

employes shall also have the right to refrain from any or all of such activities."

§ 111.06 (2), p. 1907:

"(2) It shall be an unfair labor practice for an employe individually or in concert with others:

"(a) To coerce or intimidate an employe in the enjoyment of his legal rights, including those guaranteed in section 111.04, or to intimidate his family, picket his domicile, or injure the person or property of such employe or his family.

.          .          .          .          .

"(f) To hinder or prevent, by mass picketing, threats, intimidation, force or coercion of any kind the pursuit of any lawful work or employment, or to obstruct or interfere with entrance to or egress from any place of employment, or to obstruct or interfere with free and uninterrupted use of public roads, streets, highways, railways, airports, or other ways of travel or conveyance."

§ 111.07, p. 1908:

"111.07 *Prevention of unfair labor practices.* (1) Any controversy concerning unfair labor practices may be submitted to the board in the manner and with the effect provided in this subchapter, but nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction."

[3] "It is ordered that the Respondent Unions, their officers, members and agents immediately cease and desist from

"1. Coercing and intimidating any person desiring to be employed by the Kohler Company in the enjoyment of his legal rights, intimidating his family, picketing his domicile, or injuring the person or property of such persons or his employe.

"2. Hindering or preventing by mass picketing, threats, intimidation, force or coercion of any kind the pursuit of lawful work or employment by any person desirous of being employed by the Kohler Company.

"3. Obstructing or interfering in any way with entrance to and

Without change of substance it was enforced by a Wisconsin Circuit Court, and the State Supreme Court affirmed that judgment. 269 Wis. 578, 70 N. W. 2d 191. As the appeal raised an important question of federalism, we noted probable jurisdiction. 350 U. S. 957.[4]

The Kohler Company is subject to the National Labor Relations Act. It seems agreed, and we think correctly in view of the findings of fact, that the alleged conduct of the union in coercing employees in the exercise of their rights is a violation of § 8 (b)(1) of that Act.[5] Since

egress from the premises of the Kohler Company.

"4. Obstructing or interfering with the free and uninterrupted use of public roads, streets, highways, railways or private drives leading to the premises of the Kohler Company.

"It is further ordered that the Respondent Unions, their officers, members and agents take the following affirmative action:

"1. Limit the number of pickets around the Kohler Company premises to a total of not more than 200, with not more than 25 at any one entrance. Such pickets are to march in single file and to at all times maintain a space of at least 20 feet in width at each entrance to the Kohler Company premises over which pickets will not pass and on which persons either on foot or in conveyance may freely enter or leave the premises without interference."

[4] The legal problems have received considerable attention in recent years. A collection of available articles appears in Note, 53 Mich. L. Rev. 602. See also Further Comments on Federalism, 54 Mich. L. Rev. 540; Isaacson, Labor Relations Law: Federal versus State Jurisdiction, 42 A. B. A. J. 415.

[5] "SEC. 8. . . .

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 . . . ." 61 Stat. 136, 141, 29 U. S. C. § 158 (b)(1).

"SEC. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . ." 61 Stat. 140, 29 U. S. C. § 157.

there is power under the Act to protect employees against violence from labor organizations by assuring their right to refrain from concerted labor activities, the National Labor Board might have issued an order similar to that of the State Board.[6]   The provisions of the National Labor Relations Act, as amended, cover the labor relations of the Kohler Company.   *Labor Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 31.   These provisions may be assumed to include the coercion not only of strikers but also of other persons seeking employment with the plant.[7]

By virtue of the Commerce Clause, Congress has power to regulate all labor controversies in or affecting interstate commerce, such as are here involved.   If the congressional enactment occupies the field, its control by the Supremacy Clause supersedes or, in the current phrase, pre-empts state power.   *Kelly* v. *Washington,* 302 U. S. 1, 9.   In the 1935 Act, § 10 (a), the Board was empowered to prevent unfair labor practices.   By § 10 (a) this power was made "exclusive."   49 Stat. 449, 453, 29 U. S. C. § 160.   In the Taft-Hartley amendments of 1947, the word "exclusive" was omitted but the phrase, "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise," was re-enacted without significant change.   The omission was explained in the Conference Report.[8]

---

[6] Cf. *In the Matter of Local #1150, United Electrical, Radio & Machine Workers,* 84 N. L. R. B. 972; *In the Matter of Perry Norvell Co.,* 80 N. L. R. B. 225; *United Mine Workers of America, District 2,* 96 N. L. R. B. 1389.

[7] See *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 182, *First.* Cf. *Labor Board* v. *Hearst Publications,* 322 U. S. 111, 120, I.

[8] H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. 52:

"(1) The House bill omitted from section 10 (a) of the existing law the language providing that the Board's power to deal with unfair labor practices should not be affected by other means of

Yet under the 1935 Wagner Act this Court ruled that Wisconsin, under its same Labor Peace Act, could enjoin union conduct of the kind here involved. *Allen-Bradley Local* v. *Wisconsin Board,* 315 U. S. 740. At that time, however, the federal Act made no provision for enjoining union activities. With the passage of the Taft-Hartley Act in 1947, the Congress recognized that labor unions also might commit unfair labor practices to the detriment of employees, and prohibited, among other practices, coercion of employees who wish to refrain from striking. See n. 5, *supra.* Appellant urges that this amendment eliminated the State's power to control the activities now under consideration through state labor statutes.

It seems obvious that § 8 (b)(1) was not to be the exclusive method of controlling violence even against employees, much less violence interfering with others approaching an area where a strike was in progress.[9] No one suggests that such violence is beyond state criminal power. The Act does not have such regulatory pervasiveness. The state interest in law and order precludes such interpretation. Senator Taft explained that the federal

---

adjustment or prevention, but it retained the language of the present act which makes the Board's jurisdiction exclusive. The Senate amendment, because of its provisions authorizing temporary injunctions enjoining alleged unfair labor practices and because of its provisions making unions suable, omitted the language giving the Board exclusive jurisdiction of unfair labor practices, but retained that which provides that the Board's power shall not be affected by other means of adjustment or prevention. The conference agreement adopts the provisions of the Senate amendment. By retaining the language which provides the Board's powers under section 10 shall not be affected by other means of adjustment, the conference agreement makes clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies."

[9] *United Construction Workers* v. *Laburnum Construction Corp.,* 347 U. S. 656, 666–669, a state case that allowed tort recovery, makes this clear.

prohibition against union violence would allow state action.[10]

Appellant is of the view that such references were "to the general state criminal law against violence and coercion, not to state labor relations statutes." But this cannot be correct since *Allen-Bradley Local* v. *Wisconsin Board*, the leading case dealing with violence under this same Wisconsin statute, was well known to Congress.[11]

---

[10] 93 Cong. Rec. 4437:

"The Senator from Oregon a while ago said that the enactment of this proposed legislation will result in duplication of some of the State laws. It will duplicate some of the State laws only to the extent, as I see it, that actual violence is involved in the threat or in the operation.

.          .          .          .          .

"Mr. President, I may say further that one of the arguments has suggested that in case this provision covered violence it duplicated State law. I wish to point out that the provisions agreed to by the committee covering unfair labor practices on the part of labor unions also might duplicate to some extent that State law. Secondary boycotts, jurisdictional strikes, and so forth, may involve some violation of State law respecting violence which may be criminal, and so to some extent the measure may be duplicating the remedy existing under State law. But that, in my opinion, is no valid argument."

See also 93 Cong. Rec. 4024; S. Rep. No. 105, 80th Cong., 1st Sess. 50.

[11] There it was said:

"The only employee or union conduct and activity forbidden by the state Board in this case was mass picketing, threatening employees desiring to work with physical injury or property damage, obstructing entrance to and egress from the company's factory, obstructing the streets and public roads surrounding the factory, and picketing the homes of employees. So far as the fourteen individuals are concerned, their status as employees of the company was not affected.

"We agree with the statement of the United States as *amicus curiae* that the federal Act was not designed to preclude a State from enacting legislation limited to the prohibition or regulation of this type of employee or union activity. The Committee Reports on the federal Act plainly indicate that it is not 'a mere police court measure' and that authority of the several States may be exerted to control

The fact that the Labor Management Relations Act covered union unfair practices for the first time does not make the *Allen-Bradley* case obsolete. Orders which originate in state boards and become effective through the state judiciary should give more careful protection to the rights of labor than the purely judicial orders of a court.

There is no reason to re-examine the opinions in which this Court has dealt with problems involving federal-state jurisdiction over industrial controversies. They have been adequately summarized in *Weber* v. *Anheuser-Busch, Inc.*, 348 U. S. 468, 474–477. As a general matter we have held that a State may not, in the furtherance of its public policy, enjoin conduct "which has been made an 'unfair labor practice' under the federal statutes." *Id.*, at 475, and cases cited. But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence.[12] The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence. This conclusion has been explicit in the opinions cited in note 12.

The States are the natural guardians of the public against violence. It is the local communities that suffer

such conduct. Furthermore, this Court has long insisted that an 'intention of Congress to exclude States from exerting their police power must be clearly manifested.' . . . Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board." 315 U. S. 740, 748–749.

[12] See *Weber* v. *Anheuser-Busch, Inc.*, 348 U. S. 468, 477, 482; *United Construction Workers* v. *Laburnum Construction Corp.*, 347 U. S. 656, 666–669; *Garner* v. *Teamsters Union*, 346 U. S. 485, 488; *International Union* v. *O'Brien*, 339 U. S. 454, 459; *International Union* v. *Wisconsin Employment Relations Board*, 336 U. S. 245, 253.

most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect.

We hold that Wisconsin may enjoin the violent union conduct here involved. The fact that Wisconsin has chosen to entrust its power to a labor board is of no concern to this Court.[13]

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

There are instances where we have sustained identical regulations of the same act by both a State and the Federal Government. *California* v. *Zook,* 336 U. S. 725, is an example. But the instances are few and far between.

Of course, where the States and the Federal Government regulate the same act, but each with a different sanction, both often survive. *United Workers* v. *Laburnum Corp.,* 347 U. S. 656, is a recent example. We there allowed a common-law tort action for damages to be enforced in a state court for the same acts that could have been the basis for administrative relief under the federal Act. But the present case is not that case. Here the State has prescribed an administrative remedy that duplicates the administrative remedy prescribed by Congress. Each reaches the same identical conduct. We disallowed that duplication of remedy in *Garner* v. *Teamsters Union,* 346 U. S. 485. In that case we held that a state court could not enjoin action which was subject to an unfair labor proceeding under the federal Act. And see *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468. Today we depart from *Garner* and allow a state board to enjoin action

---

[13] Cf. *Hughes* v. *Superior Court,* 339 U. S. 460, 467; *International Brotherhood of Teamsters* v. *Hanke,* 339 U. S. 470, 479.

which is subject to an unfair labor proceeding before the federal board. We sanction a precise duplication of remedies which is pregnant with potentialities of clashes and conflicts.*

Of course the States may control violence. They may make arrests and invoke their criminal law to the hilt. They transgress only when they allow their administrative agencies or their courts to enjoin the conduct that Congress has authorized the federal agency to enjoin. We retreat from *Garner* and open the door to unseemly conflicts between state and federal agencies when we sustain what Wisconsin has done here.

---

*\*Allen-Bradley Local* v. *Wisconsin Board*, 315 U. S. 740, is not in point because the federal Act at that time made no provision for enjoining union activities.