THE RICHMAN BROTHERS CO., APPELLEE, *v.* AMALGAMATED CLOTHING WORKERS OF AMERICA ET AL., APPELLANTS.*

(No. 24053—Decided July 10, 1957.)

---

*For former opinion reversing ruling of Common Pleas Court dissolving temporary injunction restraining picketing, on ground of want of jurisdiction, and ordering cause reinstated for trial on merits, see *Richman Bros. Co.* v. *Amalgamated Clothing Workers of America,* 101 Ohio App., 459.

*Messrs. Jones, Day, Cockley & Reavis,* for appellee.

*Messrs. Smoot & Riemer, Mr. William J. Isaacson* and *Mr. Herbert Semmel,* for appellants.

KOVACHY, J. Plaintiff is The Richman Brothers Company, a corporation, manufacturing men's clothing at factories in Cleveland, Ohio, and Sturgis, Kentucky, and selling it at 68 retail stores—31 in 16 cities in Ohio and one each in 37 cities in 16 other states. It employs approximately 1,500 manufacturing employees. Its annual purchases from outside Ohio exceed $2,000,000, and it ships goods in excess of $2,000,000 annually to its stores in states outside Ohio. The total annual sales of all stores are in excess of $10,000,000. It is conceded that Richman is engaged in interstate commerce.

Defendants are Amalgamated Clothing Workers of America, A.F.L.-C.I.O.; the Cleveland Joint Board, an affiliate of the Amalgamated Clothing Workers of America; various other local union affiliates with the Amalgamated Clothing Workers of America; and various individual employees and members of those unions.

The cause before us is an appeal on questions of law and fact from a judgment entered in favor of the plaintiff and against the defendants in the Common Pleas Court of Cuyahoga County, whereby the defendants were permanently enjoined from picketing the retail stores of the plaintiff. The case is submitted on a stipulation of facts, a transcript of the proceedings in the Common Pleas Court and on oral arguments and briefs of counsel.

The record discloses that Amalgamated had tried for ten years to organize the manufacturing employees of Richman, without success. They, thereupon, decided to change their tactics by pursuing a campaign of economic pressure against the retail stores of Richman. Their plan consisted of a widespread effort to inform the consuming public of the fact that Richman's clothes are not union made and do not have a union label, and to urge them to buy clothes that are union made and bear union labels. They carried out this plan by utilizing the media of press, radio, meetings, sound trucks, and leaflets, and, in March 1951, commenced picketing Richman's retail stores with large signs and banners with these inscriptions:

"Richman's clothes are not union made; buy union made clothing."

"Richman's clothes do not have a union label; buy clothes which have union labels."

Their method consisted of patrolling one or two persons, and in some instances several persons, none of whom were employees of Richman, in front of the main entrances of plaintiff's retail stores with banners and signs above described.

The picketing on the whole was peaceful and orderly. However, the record discloses some 20 occasions in a period of 2 years when "special sporadic picketing demonstrations" took place before 10 of the retail stores, which were departures from the usual pattern of picketing.

On these occasions, 15 to 20 pickets, and sometimes more, would circle single file, 3 to 4 feet apart, in front of the entranceways to the stores, carrying banners and balloons filled with helium gas. The banners were attached to long poles and the balloons were attached to strings 8 to 15 feet long, and both banners and balloons carried inscriptions on them. The pickets milled about, singing and shouting for hours, creating much confusion and disturbance to all persons passing into or past the stores. By their actions, the pickets blocked the entranceways to the stores and diverted much of the pedestrian traffic outward and away from the entrances.

These demonstrations were patently deviations from peaceful picketing because they constituted conduct which intruded upon the rights of the public in the use of streets and sidewalks and effectually prevented ingress to and egress from the entranceways of Richman's stores, thus transgressing Richman's right to free and uninterrupted access to its places of business.

In an opinion reversing the dismissal of the petition in this case by the Common Pleas Court, this court said (Hurd, J.) with respect to the allegation in the petition bearing on this matter that the " 'special sporadic picketing demonstrations' * * * can not be equated with peaceful picketing but must be construed as mass picketing." *Richman Bros. Co.* v. *Amalgamated Clothing Workers of America,* 101 Ohio App., 459, 131 N. E. (2d), 662.

Since the evidence in the record amply supports this allegation, we logically must, and do, hold that Amalgamated, as far as such demonstrations were concerned, engaged in mass picketing and in a course of conduct that was contrary to law and order and the peace and dignity of the state.

Defendants claim that their activities were in the furtherance of a "union label campaign" and should be interpreted as an aspect of the organization of Richman's manufacturing employees. They say further that they hoped by these means to educate the general public to the fact that Richman does not employ union labor and its clothes do not have union labels and to "remove the hostility of the employer which * * * was the chief stumbling block to the employees joining the union." Plaintiff in its petition alleges that defendants are engaged in a conspiracy to bring economic pressure to bear against it for the purpose of coercing it into forcing unionization of its eligible employees to enable Amalgamated to become the representative of such employees.

The record is devoid of evidence that Richman ever objected to its employees joining the union. To us, it seems that the union, despairing of organizing Richman's manufacturing employees by direct methods, decided to attain this objective through their employer Richman. With this in view, they inaugurated a multiphased program, in which they utilized all known media of information, to familiarize the public with the fact that Richman employees were nonunion and sought to climax the campaign with a type of picketing calculated to bring Richman into line with their purpose of organizing its employees. The picketing, in addition to informing the public of Richman's employees' nonunion status, made manifest to Richman their determination to have union labels on its clothes and, at the same time, brought economic pressure to bear on Richman at its most vulnerable spot, its retail stores, since these stores are the only outlet for its manufactured goods. Amalgamated well knew the reluctance of the public generally to cross a picket line. Their unmistakable purpose by these activities, therefore, was to so injure the business of Richman as to force it to enter into a contract with them for the right to use the union label on its clothes. This, however, they well knew,

could not be done without the manufacturing employees becoming unionized. Consequently, it necessarily follows that the very essence of Amalgamated's campaign was to intimidate and coerce Richman into compelling its manufacturing employees to join Amalgamated. Such activities are proscribed by the Labor Management Relations Act, 1947 (Title 29, Section 141, U. S. Code) as unfair labor practices. See Sections 158 (a) (1) and 158 (a) (3), and Section 158 (b) (2) of Title 29, U. S. Code.

The sole question in this case thus becomes: Where no labor dispute exists between an employer and the nonunion employees of a manufacturing plant engaged in interstate commerce, does a state court have the jurisdiction to enjoin a labor union from picketing and bannering the retail stores of said employer for the purpose of coercing and intimidating him through economic pressure into compelling his manufacturing employees to join their union when the picketing and bannering, in the main, is conducted in an orderly and peaceful manner with the exception of certain sporadic demonstrations that amount to mass picketing?

The juridical answers to this question are found in the recent pronouncements of the Ohio Supreme Court and United States Supreme Court and may be summarized as follows:

(1) A state court is without jurisdiction to enjoin the picketing by a labor union, in a dispute with an employer, engaging in interstate commerce, over the unionization of the employer's nonunion employees, where the union pickets the business locations of such employer in an orderly and peaceful manner and the controversy is related to an unfair labor practice that comes within the purview of the Labor Management Relation Act, 1947, for the reason that the employer must, initially at least, pursue its remedy before the National Labor Relations Board.

*Grimes & Hauer, Inc.*, v. *Pollock*, 163 Ohio St., 372, 127 N. E. (2d), 203; *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161; *Weber* v. *Anheuser-Busch, Inc.*, 348 U. S., 468, 99 L. Ed., 546, 75 S. Ct., 480; *Retail Clerks International Assn., Local No. 560*, v. *J. J. Newberry Co.*, 352 U. S., 987, 1 L. Ed. (2d), 367, 77 S. Ct.,

386; *Local Union 429, International Brotherhood of Electrical Workers, A. F. of L.*, v. *Farnsworth & Chambers Co., Inc.,* 353 U. S., 969, 1 L. Ed. (2d), 1133, 77 S. Ct., 1056; *San Diego Bldg. Trades Council* v. *Garmon,* 353 U. S., 26, 1 L. Ed. (2d), 618, 77 S. Ct., 607.

(2) A state court has the jurisdiction to enjoin picketing by a labor union, in a dispute with an employer engaging in interstate commerce over the unionization of the employer's nonunion employees, where the union pickets the business location of such employer in a disorderly manner that amounts to mass picketing, for the reason that a state's interest in law and order is paramount and the National Labor Relation Act does not pre-empt the state's power to prevent mass picketing, violence and a breach of the peace, even though the controversy is related to an unfair labor practice and comes within the jurisdiction of the National Labor Relations Board.

In *United Automobile, Aircraft & Agricultural Implement Workers* v. *Wisconsin Employment Relations Board,* 351 U. S., 266, 100 L. Ed., 1162, 76 S. Ct., 794, the Supreme Court of the United States said at page 274 of the U. S. Reports:

"As a general matter we have held that a state may not, in the furtherance of its public policy, enjoin conduct 'which has been an "unfair labor practice" under the federal statutes.' * * * But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the states power to prevent mass picketing, violence, and overt threats of violence."

See *Allen-Bradly Local No. 1111* v. *Wisconsin Employment Relations Board,* 315 U. S., 740, 86 L. Ed., 1154, 62 S. Ct., 820.

It follows from the above that this court has the jurisdiction under the facts and circumstances presented in the record to enjoin the defendants from engaging in mass picketing and any course of conduct which (1) interferes with the means of ingress and egress to and from plaintiff's retail stores; (2) interferes with pedestrian or vehicular traffic in and about said stores; and (3) is contrary to law and order and the peace and dignity of a state. In all other respects, this court is without jurisdiction.

*Decree accordingly for plaintiff.*

SKEEL, P. J., and HURD, J., concur.