HENRY HUTCHBY, AND PAINTER'S UNION LOCAL 567, PETITIONERS, v. SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, AND THE HONORABLE JOHN E. GABRIELLI, JUDGE OF DEPARTMENT 3 THEREOF, RESPONDENTS.

No. 4966

October 19, 1965                    406 P.2d 710

*Bissett, Logar & Groves,* of Reno, *Neyhart & Grodin,* of San Francisco, for Petitioners.

*Peter I. Breen,* of Reno, for Respondents.

## OPINION

By the Court, BADT, J.:

This is an original petition for a writ of prohibition.

In 1962 the National Labor Relations Board certified petitioners as the statutory bargaining representatives for the employees of Tom Joyce Floors, Inc. (hereinafter referred to as Joyce). After several negotiating meetings with petitioners, Joyce refused to bargain with the union over the terms of a hiring hall clause. This refusal to bargain collectively with petitioners was found to be an unfair labor practice under federal law by the National Labor Relations Board. (See Tom Joyce Floors, Inc., 149 NLRB, No. 88, 1964, CCH NLRB, ¶ 13,577.) Joyce has refused to comply with this order of the National Labor Relations Board and a petition for enforcement of the board order is now pending before the Ninth Circuit Court of Appeals.

On May 25, 1965, Joyce obtained a temporary injunction from the respondent court restraining petitioners

and their agents and district representatives from "further picketing any place of business where Tom Joyce Floors, Inc., * * *, is engaged in business, or employer's place of business for that purpose where the objective is to destroy said plaintiff's subcontracts or to interfere with his lawful and legitimate business."

Despite this injunction, petitioners continued their picketing, which was in all respects peaceful. Two pickets were used, one carrying a sign reading: "Tom Joyce Floors unfair to organized labor. Operating under conditions less favorable than area floor agreement. This is an informational picket. Painter's Local 567 Reno." No collective bargaining agreement was in effect between the union and Joyce at this time.

The union contended that the purpose of this picketing was to compel Joyce to bargain and to publicize the fact that Joyce did not provide its employees with wages and conditions of employment prevailing in the area for similar work under union contracts. Joyce claimed the purpose was to destroy its business. As a result, Joyce instituted contempt proceedings and the petitioners were adjudged guilty of contempt and fined $150. The court made no specific finding as to the existence or non-existence of an unlawful actionable conspiracy (criminal or civil) as alleged but simply found that, by virtue of the state of the record, there was a sufficient basis to conclude that at least a substantial purpose and effect of the petitioners' picketing had developed to a point where it amounted to an attempted destruction of the employer's business which the court felt was violative of state law.

Petitioners seek relief from the injunction and contempt citation by means of this writ of prohibition. They contend that sole and exclusive jurisdiction of the controversy is vested in the National Labor Relations Board and that the respondent court is and was without jurisdiction to enjoin the picketing, and a fortiori, to punish for contempt of the injunction. Counsel for both sides stipulated that Joyce does sufficient interstate business, particularly by purchase of materials from outside the state, in excess of $50,000 a year, to bring it within the jurisdictional standard of the National Labor Relations Board.

As we are of the opinion that the position of the petitioners is well founded on this ground and that this is dispositive of the case, it is the only issue to which we shall direct our attention.

The respondents contend that petitioners' theory of the case, namely, that Joyce's evidence on the motion for temporary injunction and the allegations contained in its complaint and motion "are arguably against an unfair labor practice and thus within the jurisdiction of the National Labor Relations Board," is incorrect. The respondents claim that the pleadings and evidence in support of the injunction in the district court were "based upon a conspiracy on the part of the petitioners to destroy plaintiff's business, and * * * that a state court has jurisdiction to enjoin acts which are done in pursuance of a common-law conspiracy to harm another party."

Unfortunately, respondents mistake the issue and the purpose of the picketing. The purpose of the picketing was not to destroy Joyce but to exert pressure to compel Joyce to bargain collectively with the certified representatives of his employees. Its refusal is defined by the National Labor Relations Act (Sec. 8(a)(1)(5)) as an unfair labor practice. This, then, was the issue. It is important to note that there was no agreement in effect as to hiring and wages between Joyce and petitioners. Even if we were to accept the lower court's finding that the picketing was to destroy Joyce's sub-contracts, it was still arguably to prevent an unfair labor practice.[1]

---

[1]"Rights of Employees. Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

"Unfair Labor Practices. Sec. 8. (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; * * *

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

The cases on which most reliance is placed by respondents are United Automobile Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), and United Construction Workers v. Laburnum Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). It will be seen that these two cases, and others similar to them, were distinguished by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), commonly referred to as "the second Garmon case." That case involved a controversy between union and employer in the classic case for National Labor Relations Board jurisdiction. Petitioner was a union and respondents were co-partners in the business of selling lumber. The latter asked for an injunction and damages. The union had sought from respondents an agreement to retain in their employ only those workers who were already members of the union, or who applied for membership within thirty days. Respondents refused, claiming that none of their employees had shown a desire to join a union, and that, in any event, they could not accept such an arrangement until one of the unions had been designated by the employees as a collective bargaining agent. The union began to picket peacefully respondents' place of business and exert pressure on customers and suppliers to persuade them to stop dealing with respondents.

The court said:

"In determining the extent to which state regulation must yield to subordinating federal authority, we have been concerned with delimiting areas of potential conflict; potential conflict of rules of law, of remedy, and of administration." Garmon, supra, at 241, 242.

"We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent stands of substantive law and differing remedial schemes. But the unifying consideration of our decisions has been with regard to the fact that Congress has entrusted administration of the labor policy for the nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." Id., at 242.

The difficulty was thus expressed:

"Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See Garner v. Teamsters Union, 346 U.S. 485, 492–497. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern." Id., at 247.

The apparent discrepancy with prior holdings was thus disposed of:

"It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence or imminent threats to the public order. United Automobile Workers v. Russell, 356 U.S. 634; United Construction Workers v. Laburnum Corp., 347 U.S. 656. We have also allowed the States to enjoin such conduct. Youngdahl v. Rainfair, 355 U.S. 131; Auto Workers v. Wisconsin Board, 351 U.S. 266. State jurisdiction has prevailed in these situations because the compelling state interest in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers v. Laburnum Corp., 347 U.S. 656, found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence.' In the present case there is no such compelling state interest." Id., at 247, 248.

Finally the court held:

"When an activity is arguably subject to Section 7 or Section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id., at 245.

The application of the foregoing to the present case is clear. A state court may not, in these circumstances, exercise jurisdiction of a given controversy which is "arguably subject" to the prohibitions or protections of the National Labor Relations Act. The National Labor Relations Board must determine initially whether the federal act applies to the circumstances giving rise to the litigation.

Here it is conceded that interstate commerce is involved and that the picketing was peaceful. The union's activity may "arguably" have been protected or the employer's actions prohibited, depending upon the application of any one of several sections of the National Labor Relations Act.

Garmon compels us to grant the application for writ of prohibition as against the respondent court and the judge thereof, and it is so ordered. The judgment and sentence for contempt are annulled.

THOMPSON, J., and ZENOFF, D. J., concur.

MCNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District to sit in his place.