DONALD E. PERCY, Secretary Department of Health and SocialServices
You have asked whether the Wisconsin Hospital Rate Review Committee, operating under sec. 146.60, Stats., may consider a hospital's excess bed capacity in determining the reasonableness of the hospital's rate increase. More specifically, based on the background to which your letter refers, you inquire whether the National Health Planning and Resources Development Act of 1974, *Page 384 
42 U.S.C. sec. 300k, et seq., hereafter "Act," precludes the Rate Review Committee from considering such excess bed capacity. This is the only question which you have asked and I confine my remarks to your question.
In my opinion the answer is no.
The Wisconsin Hospital Rate Review Program (WHRRP) was created in material part to contain hospital costs. See the WHRRP Manual, pp. 2 and 3. The Rate Review Committee is "a committee of the State of Wisconsin, the Wisconsin Hospital Association, and Blue Cross of Wisconsin, and is charged with reviewing rate requests and rendering decisions, subject to appeal, on the acceptance or rejection of these requests." WHRRP Manual, pp. 9-10. The current process includes "[u]sing comparative analysis techniques to perform two comparisons . . . first, and most important, a comparison of a hospital's experience (budget vs. prior experience), then, comparison with hospitals by grouping." WHRRP Manual, p. 7. In addition to comparing in terms of percent of occupancy, i.e., whether there is excess bed capacity, the Committee also compares such items as length of stay and employes per patient day. Id. at p. 9.
There is, of course, no express federal bar to the Committee's consideration of excess bed capacity in this context. In determining whether Congress impliedly foreclosed state action, the first inquiry is whether the local regulation "conflicts with federal law or would frustrate the federal scheme," and the second inquiry is whether it can be seen from "the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Malone v. White Motor Corp., 435 U.S. 497,504 (1978).
With respect to the first level of inquiry, the Committee's consideration of excess bed capacity as a factor in determining the reasonableness of a hospital rate increase neither conflicts with nor frustrates the Act. In fact, it complements the federal purposes.
The overall purposes of the Act are to provide a uniform planning mechanism to assure equal access to quality health care at a reasonable cost, to control the distribution of health resources, to provide incentives for alternative levels of health care, and to augment state planning. See, 42 U.S.C. secs. 300k
and 300k-2. The federal program was summarized in Park East Corp.v. Califano, 435 F. Supp. 46, 50 (S.D. N.Y. 1977). *Page 385 
 The Act calls for the setting up of local Health System Agencies (HSAs), with mandated requirements for their legal structure, staff size, composition and the public nature of their meetings, sec. 3001-1 (b). The primary function of an HSA is health planning, including "preventing unnecessary duplication of Health resources. . . ." Sec. 3001-2 (a)(4). The HSA is to develop a Health Systems Plan (HSP) including an Annual Implementation Plan (AIP), sec. 3001-2 (b). The HSA is also to review at least every five years "all institutional health services offered in the health service area of the agency and . . . make recommendations to the State health planning and development agency designated under section 300m . . . respecting the appropriateness in the area of such services." Sec. 3001-2 (g) (1).
 The Act also calls for creation of State Health Planning and Development Agencies and Statewide Health Coordinating Councils, sec. 300m, which, inter alia, coordinate the HSPs and AIPs submitted by the various HSAs, and form State Health Plans. The Act finally calls for the promulgation of guidelines for and the general supervision of the entire system by the Secretary of HEW. See, e.g., secs. 300k-1, 300k-2, 300n-1(a).
The federal program itself takes into account excess bed capacity. The Secretary of the Department of Health, Education and Welfare (HEW) has identified excess bed capacity as one of the leading causes of unreasonable health care costs. 42 C.F.R. sec. 121.202 (2)(b).
It was contemplated that the WHRRP would work closely with the federal planning program. The WHRRP Manual provides at pp. 13-14 that:
 [F]or any capital expenditure project reviewable under Section 1122 of the Social Security Act or state certificate of need law . . . approval from the State Health Planning and Development Agency must be obtained. If this approval is not obtained, the Rate Review Committee will withhold depreciation, interest, and all financial requirements associated with that project.
 . . . . *Page 386 
 When requested by the appropriate HSA or the State Health Planning and Development Agency, the Rate Review Program staff . . . will provide information on the financial feasibility and advisability of all reviewable projects and information on hospital rates for each health service area. . . .
 As part of the rate review process, it is expected that the Rate Review Committee will encounter situations with individual hospitals which can be resolved through the health planning process. In these instances, the appropriate HSA may be requested to review a situation . . . or comment on ways to resolve it. HSA comments in non-1122 or certificate of need decisions will not be binding on the Rate Review Committee. However, these comments will be carefully considered.
The WHRRP also interacts with the federal medicaid program. I am informed that Region 5 of HEW has approved the Rate Review Program for setting rates for medicaid reimbursement.
Although complementary to the planning program, the Rate Review Program is different from and independent of that program. Congress itself believed that planning and rate review are different programs. In fact, it made available two separate grants: one for state planning, 42 U.S.C. sec. 300m-4, and one for state rate review, 42 U.S.C. sec. 300m-5.
The planning function consists in controlling the distribution of health facilities to meet public needs. The rate review function consists in assessing the reasonableness of rates even if the planning function's purposes have been met. The Rate Review Committee could disallow a rate increase to a hospital near full capacity since the rate might be unreasonable even if the facility is clearly needed. Conversely, a hospital conceivably could have a ninety percent vacancy, but if its rates were reasonable the Committee could approve the rate even though the hospital was subject to decertification under the Act for excess capacity. Unused capacity is material to both programs.
The planning program under the Act aims to control cost through control of distribution of resources, but not through rate review directly. See, e.g., 42 U.S.C. sec. 3001-2 (a)(1)-(4), which provides:
 Functions of health systems urgencies — Health planning as primary responsibility *Page 387 
(a) For the purpose of —
 (1) improving the health of residents of a health service area,
 (2) increasing the accessibility (including overcoming geographic, architectural, and transportation barriers), acceptability, continuity, and quality of the health services provided them,
 (3) restraining increases in the cost of providing them health services, and
 (4) preventing unnecessary duplication of health resources, each health systems agency shall have as its primary responsibility the provision of effective health planning for its health service area and the promotion of the development within the area of health services, manpower, and facilities which meet identified needs, reduce documented inefficiencies, and implement the health plans of the agency. To meet its primary responsibility, a health systems agency shall carry out the functions described in subsections (b) through (h) of this section.
One of the primary purposes of the HSA is to restrain increases in the costs of providing residents with health services. Yet the HSA has no authority to set the rates for the hospitals it reviews. The federal goal of "achievement of equal access to quality health care at a reasonable cost," 42 U.S.C. sec. 300k(a)(1), could be frustrated if hospitals were free to pass unreasonable costs on to the public. The rate review function complements the federal planning scheme, and, given the fact that the Act provides for just such a program, 42 U.S.C. sec. 300m-5, it was contemplated by Congress that such programs could coexist.
Therefore, far from frustrating the purposes of Congress, the Rate Review Program, including its consideration of excess capacity, complements the federal scheme.
Turning from the first level of inquiry to the second, the question becomes whether it can be seen from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the states.
I already have noted that planning and rate review are separate and distinct functions even though excess capacity is relevant to both undertakings. Further, I already have noted that Congress expressly *Page 388 
contemplated state involvement both in the planning area and in the rate review area. It hardly can be said that Congress intended to occupy the field to the exclusion of the states.
One court has held that the Act preempts the area of health planning. Park East Corp. v. Califano, 435 F. Supp. 46 (S.D. N.Y. 1977). An analysis of this case, however, shows that the word "preemption" was used in the sense that the state's planning function cannot conflict with the uniform scheme established by Congress. Here, the consideration of excess capacity is within the context of the rate review function, not the planning function.
In Park East, the court was asked to grant a preliminary injunction to restrain New York health officials from closing a small proprietary hospital for hospital and life safety code violations. The hospital claimed that the attempt to close it was motivated by a desire to eliminate excess hospital beds. The district judge held that, under the Act, the hospital could not be closed without a review by the state health systems agency according to the procedures mandated by the Act and, therefore, granted the injunction.
But, even if Congress completely occupied the field of planning, it does not follow that Congress has precluded all other regulation of subjects necessary to accomplish the planning function. If it were the case that states cannot deal with hospital growth or capacity because the National Planning Act does so, municipal zoning controls and fire codes would be rendered useless.
In Park East, the court held:
 There is no claim that this Act in any way affects a state's inherent police power to regulate hospitals and insure their compliance with various state health and hospital codes. However, the complaint alleges that the State defendants' acts in attempting to close Park East are motivated by a desire to eliminate excess hospital beds in New York State in contravention of the Act.
435 F. Supp. at 50. In the case at hand, the purpose of looking to a hospital's alleged excess capacity is not to perform the planning function, but to examine the reasonableness of the rates charged.
It is illustrative to compare the case at hand with the preemption law as it has developed in other fields. Consider, for example, picket line misconduct in a labor dispute. A state may not enjoin peaceful *Page 389 
picketing directed against an employer engaged in interstate commerce because it would be entering the preempted domain of the National Labor Relations Act which protects the federal goal of worker free choice. However, the federal power does not take away from the state the power to prevent picket line violence. The state has a separate and independent interest to secure domestic peace which enables it to regulate this facet of picket line conduct. See United Auto A. A. I. W. v. Wisconsin Emp. Rel.Bd., 351 U.S. 266 (1956) and Youngdahl v. Rainfair, Inc.,355 U.S. 131 (1957).
Similarly, excess hospital capacity is the subject of a federal planning interest of determining whether or not the hospital is needed, and is equally the subject of a state interest of determining reasonable rates. This is not a Park East or a peaceful picketing type of case in which the state is interfering with the federal scheme. It is akin to a valid building code or a picket line violence case in which the state is regulating a subject matter that, for different reasons, is subject to a federal regulation.
Congress has shown no intent to occupy either the planning or the rate review areas to the exclusion of the states. Therefore, the Rate Review Committee is not precluded from considering excess capacity in making its rate determinations.
BCL:CDH