417 So.2d 564 (1982)
MISSISSIPPI GULF COAST BUILDING & CONSTRUCTION TRADES COUNCIL, et al.
v.
BROWN & ROOT, INC.
No. 53323.
Supreme Court of Mississippi.
July 28, 1982.
*565 Charles T. Sykes, Jr., Gulfport, for appellants.
Sherman Muths, Jr., Gulfport, William A. Brown, William L. Bedman, Powell, Wilson, Brown & Maverick, Houston, Tex., Frederick A. Kullman, E. Frederick Preis, Jr., Kullman, Lang, Inman & Bee, New Orleans, La., M. Curtiss McKee, Frank M. Holbrook, Fuselier, Ott, McKee & Moeller, Jackson, Wren Way, Way & Field, Vicksburg, for appellee.
Before SUGG, HAWKINS and PRATHER, JJ.
SUGG, Presiding Justice, for the Court:
On February 11, 1981 appellants began picketing at Gate 2 of the Jack Watson Plant of the Mississippi Power Company where appellee was employed to perform repair work. Gate No. 2 is the contractors' entrance to the Jack Watson Plant off Lorraine Road and was used by other contractors engaged in work at the plant. On February 13, 1981 Chancellor Jason H. Floyd, Jr. ordered an injunction against appellants without notice enjoining appellants from:
1. Mass picketing, or congregating at or within 200 yards of Mississippi Power Company Plant, Contractor's Gate Number 2 on Lorraine Road, Harrison County, Mississippi;
2. Having in front of, or in close proximity to said Contractor's Gate Number 2 any more than four pickets at one time, such pickets at all times to be in motion and spaced not less than ten (10) feet apart in a single line, and to conduct themselves in such manner as not to block or interfere in any way with the use of such gate by any person or persons desiring to enter or leave said premises;
3. Blocking or obstructing, or attempting to block or obstruct any public or private roads used by Complainant or its employees in the work being performed at Mississippi Power Company by the placing of material objects on or over such roads;
4. Defacing, vandalizing, or interferring with any motor vehicle owned or operated by Complainant, its employees, customers, business associates or others;
5. Threatening, cursing, coercing, intimidating, insulting or doing bodily harm or threatening to do bodily harm or otherwise interferring with, hindering, harrassing or injuring any employees of Complainant, or any other person or persons doing business with Complainant, or any other person or persons doing business with Complainant or the property of any of them;
6. Placing vehicles, barriers or any other obstructions on Lorraine Road or its shoulders within 200 yards of the entranceway to Mississippi Power Company, Contractor's Gate Number 2.

*566 7. Conducting any picketing in a coercive, intimidating or threatening manner and specifically having pickets or any persons acting in concert with such pickets carrying weapons, clubs or other intimidating objects.
After a final hearing on March 18, 1981 the Chancellor entered a decree making the injunction permanent with some modification.[1]
On appeal appellants contend, (1) that the Chancery Court of Harrison County did not have jurisdiction to issue the injunction because its jurisdiction had been pre-empted by the National Labor Relations Act and, (2) that the court erred in granting an injunction on the evidence shown by the record.
The United States Supreme Court has held enactment of Federal Labor laws did not divest state courts of the authority to enjoin mass picketing, violence, and overt acts of violence. In the case of United Automobile, Aircraft & Agricultural Implement Workers of America v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956), the Court stated:
There is no reason to re-examine the opinions in which this Court has dealt with problems involving federal-state jurisdiction over industrial controversies. They have been adequately summarized in Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 474-477, 75 S.Ct. 480 [484-486], 99 L.Ed. 546, 555, 556. As a general matter we have held that a State may not, in the furtherance of its public policy, enjoin conduct "which has been made an `unfair labor practice' under the federal statutes." Id., 348 U.S. at 475 [75 S.Ct. at 485], and cases cited. But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence. The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence. This conclusion has been explicit in the opinions cited in note 12.
The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect. (351 U.S. at 274, 275, 76 S.Ct. at 799, 800, 100 L.Ed. 1172, 1173)
The United States Supreme Court has not receded from the position stated above. For example, in Sears Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 204, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209, 229 (1978) the Court noted that it had, "Held that state jurisdiction to enforce its law prohibiting violence, defamation, the intentional infliction of emotional distress or obstruction or access to property is not pre-empted by the N.L.R.A.," citing the following cases: Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; Construction Workers v. Laburnum, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025; Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582; Farmer v. Carpenters, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338; Automobile Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030.
It is equally well established that the States may not enjoin peaceful picketing when done in connection with a labor dispute. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
The injunction in this case did not ban peaceful picketing, but regulated the *567 picketing to insure that it would be peaceful. We therefore hold that appellants' first assignment of error is not well taken. There was testimony about mass picketing which commenced at Gate No. 2 of the Jack Watson Plant on Wednesday, February 11, 1981. A number of appellee's employees testified that when they arrived at the plant, the picketers were congregating at the entrance preventing any ingress. In the words of some of the witnesses the picketers were "massed up shoulder to shoulder" and would not let the appellee's employees enter. The number of picketers on February 11 were estimated by various witnesses at approximately 50-75, 60-70, 75, 75-100.
The automobiles of at least five of appellee's employees were attacked and damaged by the picketers. Windows were broken out of four automobiles. One employee's eye was injured when a piece of glass from a broken window struck his eye. One of the employees testified that as he tried to report to work on February 13 the picketers shouted obscenities and threw a 10-15 pound block of concrete through one of the windows of his car. The automobile of another employee of appellee was damaged and when it was "hit and kicked by something on the right rear twice and it was scratched up in a couple of places and the gas lid was bent in." A photographer of appellee testified that he was threatened as he attempted to take photographs of the picketing activity by a man who picked up a rock and made a visible sign that he intended to throw the rock at the photographer. Large spikes, nails or tacks had been attached to flat plates and placed throughout the parking lot and at the approaches to Gate 2. As a result about 50 automobiles had flat tires, including vehicles from the Sheriff's Department.
Major Jerry Cooper, Chief of Patrol of the Harrison County Sheriff's Department, corroborated the other witnesses description of the explosive situation. He testified that the picketers were shouting revolting and reviling language directed to the people trying to go to work and that the situation was getting out of control. He stated that appellee's employees had been provoked by damage to their automobiles and threatened to retaliate with personal violence.
Appellants argue that it was necessary for appellees to show that the pickets engaged in serious violence. Serious violence is not an essential element to the granting of an injunction involving picketing, the Supreme Court has described the conduct which the state has jurisdiction to regulate as "intimidation and threats of violence." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 248, 79 S.Ct. 773, 781, 3 L.Ed.2d 775, 784 (1959). The Court recognized in Youngblood v. Rainfair, supra, that some activities not involving overt acts of violence are as potentially explosive as physical acts. The Court stated:
The issue here is whether or not the conduct and language of the strikers were likely to cause physical violence ... Words can readily be so coupled with conduct as to provoke violence ... If a sufficient number yell any words sufficiently loudly showing an intent to ridicule, insult or annoy, no matter how innocuous the dictionary definition of that word, the effect may cease to be persuasion and become intimidation and encitement to violence ... Recognizing that the trial court was in a better position than we can be to assess the local situation, we think the evidence supports this conclusion ... that the conduct and massed name-calling by the Petitioners were calculated to provoke violence and were likely to do so unless promptly restrained." 355 U.S. 131, 138-139, 78 S.Ct. 206, 211, 2 L.Ed.2d 151, 156-157 (1957).
In our opinion the Chancellor was faced with a highly volatile situation which might erupt into violence at any time and the evidence was sufficient to sustain the issuance of the injunction.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The modification reduced the number of pickets permitted from four to two, reduced the distance in item 2 from 200 yards to 100 yards, and reduced the distance in item 6 from 200 yards to 200 feet.